J-S07015-24

2024 PA Super 162

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
  :
        v.  :
  :
  :
ALAIN SHAMIR RAMIREZ-  :
CONTRERAS  :
  :  No. 720 MDA 2023
        Appellant

Appeal from the PCRA Order Entered May 3, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004430-2020

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY LAZARUS, P.J.:        **FILED: JULY 31, 2024**

Alain Shamir Ramirez-Contreras appeals from the order, entered in the Court of Common Pleas of Dauphin County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we reverse, vacate the judgment of sentence, and remand for further proceedings consistent with this opinion.

The PCRA court set out the factual history in its memorandum opinion as follows:

> On September 10, 2020, [the] Pennsylvania State Police were [conducting] an online detail.  During this time period, [Ramirez-Contreras] began to engage in contact with [someone] he believed was a 15-year-old minor child but was actually an undercover police officer.  [Ramirez-Contreras] had conversations with the minor child about having sexual contact.  [Ramirez-Contreras] then planned to meet the minor child at a local hotel.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Ramirez-Contreras] was apprehended by the police when he arrived at the hotel.

PCRA Court Opinion, 5/3/23, at 2 (internal citations omitted).

On December 29, 2021, Ramirez-Contreras entered an open guilty plea, pending an evaluation by the Sexual Offender's Assessment Board (SOAB) to determine whether he should be classified as a sexually violent predator (SVP). *See* N.T. Guilty Plea Hearing, 12/29/21, at 2-4. Ramirez-Contreras pled guilty to one count each of criminal attempt—statutory sexual assault (F-1),[1] unlawful contact with a minor (F-2),[2] and criminal use of a communication facility (F-3).[3] On March 21, 2022,[4] the court sentenced Ramirez-Contreras to a term of 11½ to 23 months' incarceration in county prison, and a consecutive 5-year term of probation. Ramirez-Contreras did not file post-sentence motions or a direct appeal.

Instead, on May 23, 2022, Ramirez-Contreras filed a counseled, timely PCRA petition,[5] alleging plea counsel was ineffective for failing to disclose or

_____

[1] 18 Pa.C.S.A. § 3122.1(b).

[2] *Id.* at § 6318(a)(1).

[3] *Id.* at § 7512(a).

[4] The SOAB determined that Ramirez-Contreras did not meet the criteria for classification as an SVP. As noted *infra*, the court had not received the SOAB report at the time of sentencing. However, it was entered on the court docket on the same day as sentencing, March 21, 2022.

[5] Ramirez-Contreras' PCRA petition was filed within one year of the date his judgment of sentence became final, pursuant to 42 Pa.C.S.A. § 9545(b). Ramirez-Contreras was sentenced on March 21, 2022, and because he did not

*(Footnote Continued Next Page)*

- 2 -

discuss the potential immigration consequences of his guilty plea at any point during the proceedings.[6]  On February 27, 2023, the PCRA court held an evidentiary hearing at which plea counsel testified.  At the conclusion of the hearing, both parties were directed to file briefs with the PCRA court. Following the filing of briefs by the parties, the PCRA court issued a memorandum opinion and order dismissing Ramirez-Contreras' PCRA petition on May 3, 2023.

Ramirez-Contreras filed the instant timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Ramirez-Contreras raises a single question for our review:  "Did the [PCRA c]ourt err by denying the PCRA [petition]?"  Appellant's Brief, at 4.

Our standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error.  ***Commonwealth v. Johnston***, 42 A.3d 1120, 1126 (Pa. Super. 2012). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.  ***Id.***

_____

file post-sentence motions or a direct appeal, his judgment of sentence became final on April 20, 2022.  **See** 42 Pa.C.S.A. § 9545(b)(3) (judgment of sentence final at conclusion of direct review or expiration of time for seeking review); Pa.R.A.P. 903(a) ("notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken").  The instant PCRA petition was filed on May 23, 2022, well within the one-year deadline.

[6] **See Padilla v. Kentucky**, 559 U.S. 356 (2010).

- 3 -

Ramirez-Contreras, a non-citizen,[7] argues that the PCRA court erred by not granting his PCRA petition where plea counsel failed to advise him of the immigration consequences of his plea, which would trigger deportation upon his release from county prison. Accordingly, he claims that his plea could not have been made knowingly or intelligently. *See* Appellant's Brief, at 5, 7. Ramirez-Contreras further argues that the testimony given during the PCRA hearing supported a finding that plea counsel was ineffective, as plea counsel stated that she failed to properly investigate her client's immigration status and, therefore, did not discuss with him the immigration implications of his plea. *Id.* at 6.

The Commonwealth, in opposition, points to question 20 of Ramirez-Contreras' written guilty plea colloquy, which specifically asks, "If you are not a citizen of the United States, do you understand that entering a guilty plea may result in certain immigration consequences and that an attorney would be able to advise you on those issues?" Appellee's Brief, at 4 (citing Guilty Plea Colloquy, 12/29/21, at 5). Further, the Commonwealth cites to *Commonwealth v. Pollard*, 832 A.2d 517 (Pa. Super. 2003), for the assertion that Ramirez-Contreras is bound by the plea, even if he did not have sufficient knowledge regarding any immigration consequences, because he did not object to its contents. *See* Appellee's Brief, at 5. The PCRA court similarly highlighted question 20 of Ramirez-Contreras' written guilty plea when it

---

[7] Ramirez-Contreras was born in the Dominican Republic and is a lawful permanent resident of the United States.

determined he entered the guilty plea knowingly and intelligently. **See** PCRA Court Opinion, 5/3/23, at 6 (citing Guilty Plea Colloquy, 12/29/21, at 5).

When a petitioner claims that he has received ineffective assistance of counsel, relief will only be granted with a showing, by a preponderance of the evidence, that:

> his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. **A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different**. . . . [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Johnson**, 966 A.2d 523, 532-33 (Pa. 2009) (citations and quotation marks omitted) (emphasis added); **see also Strickland v. Washington**, 466 U.S. 668, 687 (1984); **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987) (adopting **Strickland**). Moreover, if any of the three prongs are not satisfied, the entire claim fails. **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) (citation omitted).

Our Supreme Court has long held:

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness

caused [an a]ppellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

*Commonwealth v. Mitchell*, 105 A.3d 1257, 1272 (Pa. 2014) (citations omitted). Generally, entry of a guilty plea waives all claims and defenses as to the validity of the plea. *See, e.g.*, *Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018). Additionally, "a defendant is bound by the statements [that] he makes during his plea colloquy." *Id.* at 506 (citation omitted). However, "[w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Wah*, 42 A.3d 335, 338-39 (Pa. Super. 2012) (quotation marks and citation omitted). This Court further addressed the expectations of counsel in *Commonwealth v. McDermitt*, 66 A.3d 810 (Pa. Super. 2013), stating "*Padilla* [*v. Kentucky*, 559 U.S. 356 (2010),] requires counsel to inform a defendant as to a risk of deportation[.]" *Id.* at 814.

In *Padilla*, the United States Supreme Court analyzed the unique issue of the risk of deportation as a consequence of a criminal conviction. The *Padilla* Court stated:

> We have long recognized that deportation is a particularly severe "penalty," [] but it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. . . . And, importantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders. Thus, we find it "most difficult" to divorce the penalty from the conviction in the deportation context. []

- 6 -

> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a **Strickland** claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. **Strickland** applies to Padilla's claim.

**Id.** at 365-66 (internal citations omitted).

The **Padilla** Court further set out the obligation of a defense attorney regarding a client entering a guilty plea:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward [], a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

**Id.** at 369 (footnote omitted). The Court concluded, "counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." **Id.** at 374.[8]

---

[8] **Padilla** abrogated **Commonwealth v. Frometa**, 555 A.2d 92 (Pa. 1989), in which the Pennsylvania Supreme court determined that "counsel, in providing adequate assistance to a criminal defendant contemplating a guilty plea, is not required to advise a defendant of the collateral consequences of

*(Footnote Continued Next Page)*

- 7 -

In **Padilla**, the critical facts were that the defendant had lived in the United States for more than 40 years and, after pleading guilty to transportation of a large amount of marijuana, claimed that counsel, prior to the entry of the plea, failed to inform him about the possibility of deportation and, moreover, told him he "did not have to worry about immigration status since he had been in the country so long." **Id.** at 359 (quotation marks and citation omitted). This is in contrast to **Wah**, **supra**, wherein counsel advised the defendant "that there could be deportation consequences as a result of his plea, [and] also suggested that he seek the advice of an immigration

_____

pleading guilty, including the immigration consequences which may result from the plea." **Commonwealth v. Garcia**, 23 A.3d 1059, 1064 (Pa. Super. 2011). In **Garcia**, this Court concluded that **Padilla** did not recognize a new constitutional right, but rather "clarified and refined the scope of a criminal defendant's long-standing constitutional right to the effective assistance of counsel during the guilty plea process." **Id.** (footnote omitted).

Moreover, we explained that while "**Padilla** effectively overruled the result of the 'collateral consequences' label that the Pennsylvania courts [had previously] given to the risk of deportation," it did not announce a new right, but rather expanded the scope of **Strickland**, assuring the right to effective assistance to counsel during the guilty plea process regarding the risk of deportation. **Id.** at 1065.

The Pennsylvania Supreme Court summarized the holding in **Padilla** as "**an obligation [by counsel] to advise [a defendant that] the offense to which he would plead guilty was a deportable one, and that constitutionally competent counsel would have given such advice**. Accordingly, the [United States Supreme] Court concluded [the defendant] had established **Strickland's** first prong []." **Commonwealth v. Abraham**, 62 A.3d 343, 347 (Pa. 2012) (citation omitted) (emphasis added).

- 8 -

attorney[.]"[9] *Id.* at 340 (footnote omitted). In *Commonwealth v. Escobar*, 70 A.3d 838 (Pa. Super. 2013), this Court again reiterated that it was sufficient for counsel to advise the defendant that there was a substantial risk of deportation, that it would be likely that deportation proceedings would be instituted, and that the defendant understood deportation was possible. *Id.* at 841.

Instantly, the facts of this case are distinguishable from *Wah*. During the PCRA hearing, the Commonwealth acknowledged there was no discussion on the record as to Ramirez-Contreras' immigration status, only the single question in his signed, written colloquy, discussed above. *See* N.T. PCRA Hearing, 2/27/23, at 4. Further, plea counsel testified that her discussion with Ramirez-Contreras as to immigration concerns included simply reviewing the guilty plea colloquy and informing him that she was not an immigration attorney and that he "**could** seek counsel to discuss [immigration] options." *Id.* at 6 (emphasis added). Moreover, there was no indication in plea counsel's notes that she had any discussions with Ramirez-Contreras, the Commonwealth, or other attorneys about possible immigration consequences of the plea. *Id.* at 8-9. The following exchange occurred between PCRA counsel and plea counsel:

---

[9] In *Wah*, this advice was clearly reiterated on the record during the defendant's oral guilty plea colloquy. *See id.*

Q. Were you aware that the charges that petitioner was pleading to were going to result in a detainer and it was an absolute certainty that that was [going to] result in a detainer?

A. As I said, I don't practice immigration law, but **I did inform him that he could speak to an immigration attorney** to discuss the topic.

Q. Now, additionally, counsel, in the sentencing memorandum that you filed it indicated that the petitioner was born in New Jersey?

A. I'm not sure if it said born, but it said raised.[10] But the information that I received from there I always get from the pretrial statement—or the presentence report.

Q. Was there perhaps some confusion as to whether or not petitioner was a citizen or a Green Card holder or not?

A. I wouldn't say there was a confusion because I did go over the colloquy with him.

Q. So your confidence that there was no confusion is the sentencing colloquy—the source of your confidence is the sentencing colloquy itself?

---

[10] The sentencing memorandum, written and submitted by plea counsel, states the following:

> **Mr. Ramirez-Contreras was born to a stable family in New Jersey.** He dropped out of school in the 8th grade, but later earned his GED. He eventually went on to earn his bachelor's degree, the only person in his family to obtain a college degree.
>
> *     *     *
>
> For all the foregoing reasons, [] Ramirez-Contreras respectfully requests that This Honorable Court impose a sentence of County Work Release.

Sentencing Memorandum, 3/14/22, at 2-3, 4-5 (unpaginated) (emphasis added). The memorandum was not originally made part of the trial court record but was noted by the trial court to be "found in file" and dated June 10, 2023.

A. And the discussion I had with him surrounding the colloquy.

Q. And you would agree with me that **nowhere in your notes that you provided to me or the correspondence you had with other members of your firm or with the district attorney does it bring up possible immigration consequences**?

A. **Correct**, I did not see that in my notes.

Q. And at no time in your discussions with the district attorney did you attempt to negotiate charges which would not trigger immigration consequences?

A. I don't recall if the district attorney and I had a discussion about that or not.

Q. You would agree with me that there were no written communications?

A. That's correct.

N.T. PCRA Hearing, 2/27/23, at 7-9 (emphasis added).

The record reveals that there was not one single mention of immigration or deportation concerns during the guilty plea proceedings.[11] Rather, the conversation focused on Ramirez-Contreras' possible classification as an SVP. *See generally* N.T. Guilty Plea Hearing, 12/29/21. Moreover, plea counsel did not orally question or colloquy Ramirez-Contreras about her

---

[11] Though the court is not required to advise a defendant about the possible immigration consequences of a plea, *see Commonwealth v. Rachak*, 62 A.3d 389, 395 (Pa. Super. 2012), it is concerning that there was not one single mention of his citizenship status or immigration or deportation concerns during the guilty plea or sentencing proceedings. Further, the written guilty plea form did not ask Ramirez-Contreras if he was a United States citizen or not.

representation or his understanding of the terms of the agreement.[12] Similarly, there was no mention of Ramirez-Contreras' immigration status in plea counsel's sentencing memorandum or during the sentencing hearing. During the sentencing hearing, the discussion only touched on the fact that there was no completed report by the SOAB, that Ramirez-Contreras might have registration requirements, that there was existing mitigation evidence, the substance of that mitigation evidence, and the terms of the sentence. When Ramirez-Contreras addressed the court, there was no mention of his possible deportation, only a statement of remorse for his actions and a desire to move forward with his life. ***See generally*** N.T. Sentencing Hearing, 3/21/22.

Plea counsel's advice, although not as explicitly severe as the facially incorrect advice given in ***Padilla***, ***supra*** at 359, demonstrated that she did not ascertain Ramirez-Contreras's citizenship status and did not recommend that he **should** consult with an immigration attorney, but merely stated that he **could if that was a concern**. Ramirez-Contreras exhibited no knowledge that his guilty plea would impact his immigration status. ***See*** N.T. Sentencing Hearing, 3/21/22, at 5-6 (plea counsel stating request for work-release eligibility; Ramirez-Contreras stating his eagerness to return to work and move on from his conviction). In fact, Ramirez-Contreras was misled to

---

[12] The Commonwealth presented the terms of the agreement and confirmed Ramirez-Contreras' understanding of the charges and potential penalties. ***See*** N.T. Guilty Plea Hearing, 12/29/21, at 2-5.

believe that he would be eligible for work release and be able to continue living as before, outside the requirements of probation and Megan's Law registration. *See id.* at 8-12.

We have not hesitated to grant PCRA relief where counsel has misled a client during the plea process. *See Commonwealth v. Velazquez*, 216 A.3d 1146, 1151 (Pa. Super. 2019) (guilty plea not knowing or voluntary where counsel failed to consult with immigration attorney prior to plea and gave incorrect advice that offense not deportable); *Commonwealth v. Barndt*, 74 A.3d 185, 196 (Pa. Super. 2013) (reversing PCRA court on basis plea counsel misled defendant); *Commonwealth v. Hickman*, 799 A.2d 136, 141-42 (Pa. Super. 2002) (finding plea counsel ineffective on basis counsel gave incorrect advice defendant would be eligible for boot camp program and early release). When considering the facts of Ramirez-Contreras' written colloquy, the lack of oral confirmation of his understanding, plea counsel's testimony that she informed her client that he "could" speak to an immigration attorney, counsel's seeming lack of awareness of her client's immigration status, and Ramirez-Contreras' expressed desire to be able to return to his life as quickly as possible to support his family, we find that his guilty plea was not entered knowingly, voluntarily, and intelligently. *See Velazquez*, *supra*; *Barndt*, *supra*; *Hickman*, *supra*; *see also Padilla*, 559 U.S. at 367-68. In light of the above, Ramirez-Contreras has satisfied the arguable merit prong.

We next ask "whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate the client's

interest. If [counsel] did, our inquiry ends." *Hickman*, 799 A.2d at 140-41. The Court in *Hickman* determined counsel's advice was "devoid of any reasonable basis designed to effectuate" the defendant's interests because counsel was ignorant of relevant sentencing law. *Id.* at 141. In addition, the *Padilla* Court held that the majority of "prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Padilla*, 559 U.S. at 367. The Court expanded on this position, stating:

> We[,] too[,] have previously recognized that **[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence**. Likewise, we have recognized that preserving the possibility of discretionary relief from deportation under § 212(c) of the 1952 INA, 66 Stat. 187, repealed by Congress in 1996, would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial. **We expected that counsel who were unaware of the discretionary relief measures would follo[w] the advice of numerous practice guides to advise themselves of the importance of this particular form of discretionary relief**.

*Id.* at 368 (internal citations and quotations omitted) (emphasis added).

The following exchange occurred between PCRA counsel and plea counsel:

> Q. Your goal in negotiating a plea for petitioner was to allow him to continue to support his family and work, correct?
>
> A. That's correct.
>
> Q. And, in fact, **you were able to fashion a sentence that did allow for work release. Is that right?**
>
> A. **That's correct.**

- 14 -

Q. **However, given that the plea resulted in an immigration detainer almost immediately, that goal of work release and for him to continue to work was not possible. You would agree with that, correct?**

A. **That sounds correct.**

Q. Were you aware that the charges that petitioner was pleading to were going to result in a detainer and it was an absolute certainty that that was [going to] result in a detainer?

A. As I said, I don't practice immigration law, but I did inform him that he could speak to an immigration attorney to discuss the topic.

N.T. PCRA Hearing, 2/27/23, at 7-8 (emphasis added). It is clear from this exchange that counsel, herself, failed to consult with an immigration expert, *Velazquez*, 216 A.3d at 1150 n.3, and did not mention her own use of any practice guide. *Padilla*, 559 U.S. at 368.

Here, just as in *Padilla*, the relevant language of the immigration statute is clear that removal may be a consequence of Ramirez-Contreras' conviction. "[C]ounsel could have easily determined [whether] his plea would make him eligible for deportation simply from reading the text of the statute[.]" *Padilla*, 559 U.S. at 368. The statute clearly states that any alien who is convicted of an aggravated felony at any time is deportable, that crimes of moral turpitude[13] are deportable offenses if committed within a certain number of years and the sentence imposed may be one year or longer, and that two or more convictions of crimes involving moral turpitude out of two or

_____

[13] Convictions involving criminal sexual conduct may be considered crimes of moral turpitude. *See generally* 8 U.S.C.S. § 1227.

- 15 -

more separate schemes is deportable regardless of time. *See* 8 U.S.C.S. § 1227(a)(2)(A). *See also* 8 U.S.C.S. § 1101(a)(43)(A) (defining "aggravated felony" to include "sexual abuse of a minor"); *Singh v. Ashcroft*, 383 F.3d 144, 152-55, 163-64 (3d Cir. 2004) (where offense includes age of victim as element, offense is considered an aggravated felony); *Knapik v. Ashcroft*, 384 F.3d 84, 90-92 (3d Cir. 2004) (attempt offenses can be crimes involving moral turpitude).

Here, review of the record indicates that Ramirez-Contreras and the trial court believed he would be eligible for work-release under the terms of the plea agreement. *See* N.T. PCRA Hearing, 2/27/23, at 7-8; Sentence Order, 3/21/22 ("work release eligible" selected); Sentencing Memorandum, 3/14/22, at 2, 4-5. Ramirez-Contreras was motivated to accept the plea agreement in order to return to his life as quickly as possible to support his family. *See* N.T. Sentencing Hearing, 3/21/22, at 6. Plea counsel did not dispute this at the PCRA hearing, stating that her "goal in negotiating a plea [] was to allow [Ramirez-Contreras] to continue to support his family and work[.]" N.T. PCRA Hearing, 2/27/23, at 7.

Plea counsel's casual advice that he "could" speak to an immigration attorney, without even alerting Ramirez-Contreras that his charges "may" carry a risk of adverse immigration consequences, falls short of the

responsibilities of competent counsel.[14]   Under these circumstances, we conclude that, due to counsel's ignorance of the relevant law and failure to consider possible immigration consequences, counsel's advice was "devoid of any reasonable basis designed to effectuate [her client's] interests." *Barndt*, 74 A.3d at 196 (citations omitted).

The final consideration is whether counsel's actions prejudiced the petitioner.  *See Johnson*, *supra*.  Ramirez-Contreras argues that he was prejudiced because the plea resulted in an immigration detainer.   The Commonwealth, in opposition, argues that Ramirez-Contreras suffered no prejudice as a result of entering into the guilty plea.  Had he gone to trial, Ramirez-Contreras would likely be in the same position: "convicted, sentenced, and awaiting deportation."  Appellee's Brief, at 5.  We disagree.

As we stated, *supra*, a petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Johnson*, *supra*.  "The 'reasonable probability' test is not a stringent one." *Hickman*, 799 A.2d at 141.  In addition, the United States Supreme Court has recognized the unique risk of deportation as a potential consequence of a

---

[14] Moreover, we are concerned that plea counsel failed to even determine Ramirez-Contreras' immigration status and seemed to be operating under the assumption that he was born in New Jersey.  *See* N.T. PCRA Hearing, 2/27/23, at 4-5, 8-9; *see also* Sentencing Memorandum, 6/19/23, at 2-3 (unpaginated, misplaced in file and later added to docket despite date of March 14, 2022, on document).

criminal conviction, going so far as recognizing that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." **Padilla**, 559 U.S. at 368 (quotation marks and citation omitted).

Ramirez-Contreras claims that he would not have pled guilty or agreed to the terms of the guilty plea had he understood the immigration implications of his plea. Ramirez-Contreras states he was attempting to prioritize and support his family by accepting the guilty plea and would not be able to help his family if he were deported. **See** Appellant's Brief, at 7-8. Ramirez-Contreras seeks reversal of his convictions and/or a new trial and specifically requested that the PCRA court withdraw his plea and have the opportunity to "reconnect with the District Attorney's Office." N.T. PCRA Hearing, 2/27/23, at 11; **see also** Appellant's Brief, at 8.

In addition, had plea counsel been cognizant of the immigration repercussions of Ramirez-Contreras' plea, she might have been able to negotiate terms which would not have resulted in a deportable felony conviction. Because plea counsel had no knowledge of Ramirez-Contreras' immigration status or the immigration consequences of Ramirez-Contreras' convictions, she did not address these concerns in her discussions with the Commonwealth. **See** N.T. PCRA Hearing, 2/27/23, at 8-9. The trial court had no knowledge of Ramirez-Contreras' immigration status, such information was not a concern of the Commonwealth, and so it was left to plea counsel to ascertain this information and advocate on behalf of her client's interests.

Considering the severity of the consequences of deportation, Ramirez-Contreras' and plea counsel's demonstrated lack of knowledge of the impact of his guilty plea on his immigration status, and Ramirez-Contreras' statement that he would not have accepted the plea agreement had he known that it would lead to his deportation, we find that he made a sufficient showing of prejudice to satisfy his burden. Accordingly, finding a reasonable probability that Ramirez-Contreras would not have pled guilty but for plea counsel's incorrect advice, we conclude that his plea was involuntary and unknowing. *Padilla*, 559 U.S. at 369, 374; *Hickman*, 799 A.2d at 142.

In sum, we find the PCRA court erred when it denied Ramirez-Contreras' claim that plea counsel's ineffective assistance invalidated his guilty plea. We reverse the order denying Ramirez-Contreras' PCRA petition, vacate the judgment of sentence, and remand this case in order that Ramirez-Contreras may withdraw his guilty plea.

Order reversed. Judgment of sentence vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished. Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/31/2024

- 19 -