J-S11006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| PAPA M. CAMARA | : |
| | : |
| Appellant | : No. 982 WDA 2025 |

Appeal from the PCRA Order Entered July 16, 2025
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-CR-0002837-2024

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.: **FILED: JUNE 26, 2026**

Appellant, Papa M. Camara, appeals from the July 16, 2025, order of

the Court of Common Pleas of Westmoreland County, dismissing his petition

under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46. Upon review,

we affirm.

The PCRA court summarized the relevant background as follows.

On or about September 10, 2024, a Criminal Information was filed
against [Appellant], charging him with the following offenses:

1) Possession with Intent to Deliver Controlled Substance, in
   violation of 35 P.S. § 780-113(a)(30);

2) Possession of a Controlled Substance, in violation of 35 P.S. §
   780-113(a)(16);

3) Possession of Drug Paraphernalia, in violation of 35 P.S.§ 780-
   113(a)(32);

4) Resist Arrest/Other Law Enforcement, in violation of 18
   Pa.C.S.A. § 5104; and

5) Retail Theft, in violation of 18 Pa.C.S.A. § 3929(a)(1).

PCRA Court Opinion and Order of the Court, 7/16/25, at 1.

[At the guilty plea hearing held on November 19, 2024], after the terms and conditions of the plea were made known to the [trial court], [Appellant's counsel, Assistant Public Defender Attorney James Spriesterbach] said: "I would also note, and it's well noted on the plea petition, [Appellant] is not a U.S. citizen.  He is a Senegalese student.  He is here on a green card.  I have apprised him of the possible deportation outcome as a result from pleading guilty."  [The trial court] also conducted a verbal colloquy on the record to ensure that [Appellant]'s plea was entered knowingly, intelligently, and voluntarily.  When asked if he had enough time to review the guilty plea petition with his attorney, [Appellant] replied, "I did."   The [trial court] explained what the Commonwealth would have to prove at each count and the nature of the charges to which [Appellant] responded he understood.

When asked whether any threats or promises had been made to get him to plead guilty, [Appellant] responded, "Not really" then later said "No."  When asked why he was pleading guilty, [Appellant] replied, "Because of the information I've gotten from the cases from the charges."  When asked by the [trial court] if he believed that pleading guilty was in his best interest, [Appellant] replied, "I will be facing deportation, but – I was told that I'll be facing deportation because of my green card status." Eventually, when questioned again about whether [Appellant] was pleading guilty because it was in his best interest, [Appellant] stated, "At this time, I believe, yes."

The [trial court] asked, "So who told you you're facing deportation?" and [Appellant] replied, "My attorney told me, and I've got some information from immigration that told me also."

[The trial court], after discussing [Appellant]'s history of coming to [the] United States with [Appellant], queried what reporting obligation [Appellant] or the Commonwealth had in light of [Appellant]'s pleading guilty to a felony drug charge.  In the continued presence of [Appellant], the reality of [Appellant]'s possible deportation was discussed on the record in some detail.

PCRA Court Opinion, 9/8/25, at 4-5 (citations to the record omitted).

[After entering a negotiated guilty plea before the trial court to Counts 1-5, Appellant] was sentenced on the same day as follows: at Count 1, [Appellant] was sentenced to serve incarceration for a period of not less than time served to twelve (12) months, with credit for time served and released forthwith; Count 2 merged with Count 1; and no further sentence was imposed at Counts 3-5. [Appellant] was further ordered to pay costs and fees and obtain a drug and alcohol evaluation. Supervision of [Appellant] was transferred to Middlesex County, Massachusetts. . . . .

On November 27, 2024, [Appellant] filed a Motion to Withdraw Guilty Plea alleging that he did not fully and completely understand the circumstances and corresponding ramifications of his guilty plea. He asserts that he did not understand the elements of the offense to which he pled guilty, the potential defenses he could have raised, and is innocent of the Counts charged. [Appellant] sought to be permitted to withdraw his guilty plea to avoid "the manifest injustice that would arise should his plea be allowed to stand." Specifically, [Appellant] alleges that he was not made fully aware of the immigration-related ramifications of his plea. At a hearing before the [PCRA Court] on January 17, 2025, addressing the merits of [Appellant]'s motion to withdraw his guilty plea, Attorney Diedrich represented that it was in [Appellant]'s best interest to have new counsel appointed as [Appellant]'s best avenue for relief was a claim for ineffective assistance of counsel for entering an involuntary, unknowing, or otherwise unintelligent plea. Accordingly, [the PCRA Court] dismissed Attorney Diedrich and appointed Attorney Kenneth F. Noga to represent [Appellant]. A hearing on [Appellant]'s counseled PCRA petition, filed on February 12, 2025, was held on June 20, 2025. At the hearing, [Appellant] testified along with both trial counsel, Attorney Diedrich and Attorney Spriestersbach.

PCRA Court Opinion and Order of the Court, 7/16/25, at 1-2 (footnote omitted).

At the PCRA hearing on June 20, 2025, [Appellant] testified that when he signed the guilty plea petition, he had been suffering physical assaults and lack of proper medical care at the jail, and that he was desperate to be released from incarceration. [Appellant] said he felt that agreeing to the guilty plea was his only way out of prison. He stated that he did not feel he had enough time to adequately review the guilty plea petition. He

- 3 -

believed that even though he was agreeing that day to enter into the plea, he could withdraw his plea at a later date and file an appeal. [Appellant] expected that he would have until the expiration of his current green card before any deportation issues would arise. However, that belief was false as he was almost immediately put into Federal custody.

[Appellant] acknowledged that at no point did he indicate to the [trial court] that he had been assaulted or had not received proper medical care and that he was now raising that issue for the first time. Also, he never informed anyone that he did not want to sign the guilty plea. He acknowledged that he told the [trial court] on the day he entered the guilty plea, that he in fact, had enough time to review the guilty plea petition and was advised of his appellate rights. He, also, acknowledged that deportation was discussed with the [trial court] when entering his guilty plea.

Attorney Die[d]rich testified that prior to the entry of the guilty plea, he talked to [Appellant,] on various occasions, about possible trial strategies and/or hurdles regarding the pending charges. He indicated that significant negotiations had been going on between he and the Commonwealth in securing the best deal possible for [Appellant]. He spoke to [Appellant] numerous times about his immigration and green card status and the possible effects that could result due to the pending charges. It was [Appellant]'s decision whether to go forward or accept the time-served offer from the Commonwealth.

Attorney Spriestersbach testified that he was present with [Appellant] when he entered his guilty plea. He indicated that due to the serious immigration issues involved in this case, he spent more time with [Appellant] than he usually would. He would have gladly moved [Appellant]'s case forward, but that [Appellant] wanted to plead guilty. He believes that [Appellant] was fully aware of the consequences regarding deportation. Attorney Spriestersbach indicated that at no time did [Appellant] report any physical assaults while he was incarcerated; otherwise, he would have sought [Appellant]'s consent to contact the appropriate authorities who would properly investigate those allegations. And, in light of the serious consequences related to [Appellant]'s deportation, he noted that [Appellant] took additional time to weigh his options and consider his decision. He indicated that he went over the entire guilty plea petition with [Appellant] and feels that [Appellant] made a knowing, intelligent, and voluntary plea.

On July 16, 2025, the PCRA court denied Appellant's PCRA petition. This appeal followed.

On appeal, Appellant argued that

the Court erred in denying [Appellant]'s petition after conducting a hearing in which he asserts he provided credible testimonial evidence that he did not understand the immigration consequences associated with his guilty plea because trial counsel failed to adequately apprise [Appellant] of the collateral immigration consequences of his plea, leading him to suffer the prejudice of immigration consequences, including deportation proceedings and likely deportation.

*See* Appellant's Concise Statement, 8/12/25, at 1.[1]

When reviewing an order denying a PCRA petition, we examine whether the determination of the PCRA court is supported by the record and free of legal error. *Commonwealth v. Drummond*, 285 A.3d 625, 633 (Pa. 2022). We "consider the record in the light most favorable to the prevailing party at the PCRA level," and "grant great deference to the PCRA court's findings that are supported in the record[.]" *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018) (citations omitted).

_____

[1] On appeal, the question for our review is similar, but not identical. Specifically, before us, Appellant argues:

Appellant's plea was unknowing or unintelligent as it resulted from trial counsel's failure to properly advise the Appellant of the immigration consequences of pleading guilty, including to an ungraded felony offense, for which he would be immediately subject to deportation.

Appellant's Brief at 10.

It is well-established that to obtain "relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Webb*, 236 A.3d 1170, 1176 (Pa. Super. 2020); *see also* 42 Pa.C.S.A. § 9543(a)(2)(ii).

Generally,

[c]ounsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.*[,] there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different.

*Commonwealth v. Hand*, 252 A.3d 1159, 1166 (Pa. Super. 2021) (citations omitted).

Additionally, PCRA petitioners bear the burden of pleading and proving each of the three factors by a preponderance of the evidence. *Commonwealth v. Krock*, 282 A.3d 1132, 1137 (Pa. Super. 2022). Failure to satisfy any one of the three prongs of the test will result in failure of the entire claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

As noted above, Appellant argues that plea counsel failed to adequately apprise him of the collateral immigration consequences of his plea, and that said ineffectiveness caused him to enter an unlawful plea.

Regarding claims of ineffectiveness in relation to the entry of a plea, we note:

> Ineffective assistance of counsel claims arising from the plea-bargaining process are eligible for PCRA review. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1012-13 (Pa. Super. 2016) (citations omitted).

Moreover, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing," and "[h]e bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted).

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

*Id.*

> Pa.R.Crim.P. 590, which pertains to procedures for entering pleas and plea agreements, requires pleas to be entered in open court, and specifies that the trial judge must make inquiries, on the record, to determine whether the plea is voluntarily and understandingly tendered.

*Commonwealth v. McGarry*, 172 A.3d 60, 66-67 (Pa. Super. 2017).

The comments to Pennsylvania Rule of Criminal Procedure 590 provide that at a minimum, the court should make the following inquiries:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he or she has the right to trial by jury?
>
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment 2.

> This Court has further summarized:
>
> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

**Commonwealth v. Fluharty**, 632 A.2d 312, 314–15 (Pa. Super. 1993) (citations omitted).

Regarding the claim of adequacy of counsel's discussion with Appellant of risks of deportation following his plea,

- 8 -

[i]n the seminal case of **Padilla v. Kentucky**, due to the "seriousness of deportation as a consequence of a criminal plea," the Supreme Court of the United States considered the extent to which criminal counsel must advise noncitizen clients regarding the immigration consequences of pleading guilty to a crime. **Padilla**, 559 U.S. [356,] 374 [(2010)]. To provide effective assistance of counsel that comports with the Sixth Amendment of the United States Constitution, the Supreme Court ruled that criminal defense counsel must inform a noncitizen client "whether his plea carries a risk of deportation." **Id**. When immigration "law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." **Id**. at 369. "But when the deportation consequence is truly clear ... the duty to give correct advice is equally clear." **Id**.

In Padilla's situation, the Supreme Court determined that counsel reasonably could have determined the immigration consequence of pleading guilty to a drug offense simply by reading the text of the federal removal statute. **Id.** at 368-69. By providing Padilla with false assurances that pleading guilty would not impact his immigration status due to the length of time he had lived in the country, counsel's advice was constitutionally deficient. **Id**. The Supreme Court remanded the case for the trial court to determine whether Padilla suffered prejudice from the deficient advice. **Id.**

This Court has interpreted the duty to provide correct advice articulated in **Padilla** as a requirement to "inform a noncitizen defendant as to whether a plea carries a **risk** of deportation." **Commonwealth v. Escobar**, 70 A.3d 838, 841 (Pa. Super. 2013) (citing **Padilla**, 559 U.S. at 373-74) (emphasis added). This onus is on counsel, not the court. **Commonwealth v. Rachak**, 62 A.3d 389, 395 (Pa. Super. 2012). The duty to provide correct advice concerning the immigration consequences of a guilty plea does not necessarily require criminal counsel to advise a client that pleading guilty will result in a definite deportation. **Escobar**, 70 A.3d at 841. Even if the offense seems to be a deportable offense pursuant to the federal statute, counsel cannot predict with absolute certainty whether the "U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out [an] actual deportation." **Id.** Thus, counsel's warning that deportation was "likely and possible," combined with the written plea colloquy acknowledging the

possibility of deportation, satisfied counsel's duty under **Padilla**. **See id**.

On the other hand, this Court has made it clear that the requirement to provide correct advice means that counsel must be careful not to mislead the client about the immigration consequences of a plea. **See**, **e.g.**, **Commonwealth v. Ramirez-Contreras**, 320 A.3d 756, 765 (Pa. Super. 2024) (holding that plea counsel provided ineffective assistance by merely mentioning that the client "could" speak to an immigration attorney if he had concerns without ascertaining his immigration status or even notifying him that pleading guilty to a sex offense may result in deportation); [**Commonwealth v. Velazquez**, 216 A.3d 1146, 1150 (Pa. Super. 2019)] (holding that counsel's advice was constitutionally inadequate by erroneously telling his client that he faced no risk of deportation upon pleading guilty to simple assault).

**Commonwealth v. Sheriff**, 2025 WL 1806496, at 4-5*.

A review of Appellant's argument reveals that Appellant is not really arguing that he was not warned about the potential immigration consequences. In fact, "the record is replete with notice to [Appellant] about the deportation issues." PCRA Court Opinion, 9/8/25, at 7. Rather, his whole argument stands on Appellant's own understandings and beliefs. Indeed, Appellant acknowledges that "he was apprised that he would be subject to deportation consequences, [but] it was his belief that they would not occur until he renewed his green card. Moreover, it was his understanding that if he entered a guilty plea, he would later be able to withdraw it." Appellant's Brief at 8.

There is no record of any of his attorneys suggesting that deportation would not occur until renovation of the green card. Apparently, the only evidence is Appellant's own testimony, which the PCRA court did not believe.

- 10 -

Additionally, contrary to his own averments, Appellant was repeatedly told that deportation may occur as result of the conviction.[2]

In light of the foregoing, Appellant's claim that he was not adequately informed of the immigration consequences of his plea is devoid of any merit, as it is plainly contradicted by Appellant's own argument.

Putting aside Appellant's own admission, the PCRA court provided additional adequate reasons why Appellant's claim of ineffective assistance of counsel is meritless.

As noted above, the PCRA court, in reaching its conclusion that Appellant's claim of ineffective assistance of counsel was meritless, provided the following explanation.

> Upon reviewing the record of this case, the [trial court] finds that both Attorney Die[d]rich and Attorney Spriestersbach reviewed the guilty petition with [Appellant], which included the specific terms of the negotiated plea offer and his trial and appellate rights. In the Guilty Plea Petition, [Appellant] indicated that he can read, write, and understand the English Language. [Appellant] indicated that his physical and mental health was presently satisfactory, and any medications that he was currently taking did not interfere with his ability to understand that he was there for the purpose of entering his plea of guilt. At Paragraph 26 in the guilty plea petition, which was circled and starred, [Appellant] acknowledged that he had been advised, if he was not

---

[2] Throughout the argument, we detect some confusion regarding what exactly Appellant is challenging. He acknowledges that he was told that the conviction may result in deportation. Appellant's Brief at 8. Later on, however, Appellant argues that counsel did not mention any of the above but rather told him that the conviction would affect the renewal of his green card. Appellant's Brief at 12. As mentioned, however, Appellant's argument is not based on a claim of counsel's error but rather on Appellant's "understanding" or "belief" of what would happen as result of the plea.

a citizen of the United States, pleading guilty may be grounds for deportation.

At the guilty plea and sentencing hearing on November 19, 2024, after the terms and conditions of the plea were made known to the [trial court], Attorney Spriestersbach said: "I would also note, and it's well noted on the plea petition, [Appellant] is not a U.S. Citizen. He is a Senegalese student. He is here on a green card. I have apprised him of the possible deportation outcome as a result from pleading guilty." The [trial court] also conducted a verbal colloquy on the record to ensure that [Appellant]'s plea was entered knowingly, intelligently, and voluntarily. When asked if he had enough time to review the guilty plea petition with his attorney, [Appellant] replied, "I did." The [trial court] explained what the Commonwealth would have to prove at each count and the nature of the charges to which [Appellant] responded he understood.

PCRA Court Opinion, 7/16/25, at 3 (citations omitted). *See also* PCRA Court Opinion, 9/8/25, at 3-7.[3] We agree with the PCRA court's analysis and conclusions.

Next, Appellant argues that counsel was ineffective because there was no doubt as to immigration consequences following his plea. Thus, Appellant argues, counsel should have said so to him. Appellant's Brief at 11-12. Appellant seems to ignore that

[t]he duty to provide correct advice concerning the immigration consequences of a guilty plea does not necessarily require criminal counsel to advise a client that pleading guilty will result in a definite deportation. *Escobar*, 70 A.3d at 841. Even if the offense seems to be a deportable offense pursuant to the federal statute, counsel cannot predict with absolute certainty whether the "U.S.

---

[3] In his appellate brief, Appellant also mentions that he testified credibly about his understanding of the consequences of entering a guilty plea. Credibility of a witness is for the lower court to determine, and we are not in position of reweighing Appellant's testimony. *See*, *e.g*., *Commonwealth v. Boxley*, 838 A.2d 608, 618 (Pa. 2003).

Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out [an] actual deportation." *Id.* Thus, counsel's warning that deportation was "likely and possible," combined with the written plea colloquy acknowledging the possibility of deportation, satisfied counsel's duty under *Padilla*. *See id.*

*Sheriff*, *supra*.

Here, even if the statute requires definite deportation, as Appellant seems to suggest, counsel was not ineffective for he advised Appellant of possible deportation, which combined with the written guilty plea, satisfied his duty under *Padilla*. *Sherirff*, *supra*. Accordingly, no relief is due to Appellant on his claim of ineffective assistance of counsel.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/26/2026

- 13 -