J-S21038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BANGALEE SARNOR | : | No. 2585 EDA 2024 |

Appeal from the PCRA Order Entered August 27, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001269-2022

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:[*]       **FILED JULY 30, 2025**

The Commonwealth of Pennsylvania appeals from the order granting appellee Bangalee Sarnor's first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. In granting relief, the order, which was predicated on two distinct bases, permits Sarnor to withdraw his guilty plea to strangulation.[1] ***See*** Order, 8/27/24, at 1. We reverse.

As background from a prior Commonwealth appeal in which we remanded,

> In July 2022, following a colloquy, Sarnor pled guilty to strangulation. Sarnor signed and initialed the guilty plea statement and the statement of post-sentence rights. The court imposed a sentence of nine to 23 months' incarceration and three years' probation.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2718(a).

In September 2022, Sarnor sent the court a *pro se* motion stating he was facing deportation and asking it to allow him to enter a different plea. He stated he entered the guilty plea "under circumstances of fear, [his] life was in danger in Delaware County, and [he] was depressed and under pressure." *Pro se* Filing, dated Sept. 23, 2022. He further stated that he had lived in the United States for over 21 years and had five children that he supported. The court docketed this motion and forwarded it to trial counsel.

In October 2022, Sarnor's trial counsel filed a motion to withdraw guilty plea *nunc pro tunc*. It alleged Sarnor contended he was not "in the right frame of mind" when he entered the guilty plea because he had been suffering from depression and "felt pressured to enter said plea due to being in fear for his life." Motion to Withdraw Guilty Plea *Nunc Pro Tunc*, filed Oct. 5, 2022.

In November, the court held a hearing on the motion. Following the hearing, counsel filed a petition to file post-sentence motions *nunc pro tunc*. In it, counsel asserted it was "clear from the guilty plea colloquy that [Sarnor] believed he was being given a second 'chance to be a better and productive citizen.'" Petition for Allowance to File Post Sentence Motion *Nunc Pro Tunc*, filed Nov. 28, 2022. He noted United States Immigration and Customs Enforcement had lodged a detainer against Sarnor after he had served his minimum sentence. Sarnor argued he had shown sufficient cause to proceed *nunc pro tunc*.

The court entered an order on December 1, 2022, granting the motion to withdraw the guilty plea *nunc pro tunc*. In the order, the court withdrew the guilty plea and vacated the judgment of sentence. The Commonwealth filed a motion to reconsider the order, which the court denied. The Commonwealth filed a notice of appeal of the December 1 order.

Subsequently, on December 15, 2022, the court entered an order granting Sarnor's petition to file post-sentence motions *nunc pro tunc*. [The Commonwealth appealed.]

**Commonwealth v. Sarnor**, 2023 WL 8827933, at *1 (Pa. Super., filed Dec. 21, 2023) (unpublished memorandum) (115 & 200 EDA 2023).

On appeal, we concluded that the trial court, *inter alia*, failed to treat

Sarnor's original untimely post-sentence motion to withdraw his guilty plea *nunc pro tunc* as a PCRA petition. As such, we vacated the court's order addressing the same and remanded for further proceedings. ***See id.*** Furthermore, we required the appointment of new counsel. ***See id.***

Upon remand, the court appointed counsel, who thereafter filed the instant amended PCRA petition. ***See*** Amended PCRA Petition, 5/14/24. In that amended petition, Sarnor asserted, *inter alia*, that his guilty plea was "not entered knowingly and voluntarily" because he "was in fear of his life" and "was not advised prior to or at the time he entered his plea[] that he would be deported from the United States as a consequence of his conviction of a felony[.]" ***Id.*** at ¶ 11. The court thereafter held an evidentiary hearing in which both Sarnor and plea counsel testified. Following the hearing, Sarnor submitted a memorandum of law that, for the first time, unambiguously asserted plea counsel's ineffectiveness for not having investigated the conditions of Sarnor's pre-plea confinement at the Delaware County Prison nor having failed to explain, through requisite particularity, the specific immigration consequences of his plea. ***See*** Memorandum of Law, 7/24/24.

Ultimately, on August 27, 2024, the court issued a three-page decision that, in effect, vacated the sentence and withdrew Sarnor's guilty plea. ***See*** Order, 8/27/24, at 1. Without any discussion of ineffective assistance of counsel, the court found that Sarnor's "guilty plea was not knowing, intelligent, and voluntary." ***Id.*** at 2. In so doing, the court first concluded that

plea counsel provided insufficient advice, under **Padilla v. Kentucky**, 559 U.S. 356 (2010), insofar as counsel merely explained to him that he "could" be deported as a result of entering into the at-issue plea. Order, 8/27/24, at 2. Second, the court found, in two sentences, that the coercive conditions of Sarnor's pre-plea confinement resulted in a plea made under duress. **See id.** at 3 ("Sarnor feared for his life. He was bullied and threats were leveled at him by other inmates at the Delaware County Prison because of his African nationality [*sic*]."). The Commonwealth timely appealed and correspondingly filed a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, the Commonwealth presents two questions for review:

1. Did the court err and misapply the law by analyzing Sarnor's claim of plea counsel's ineffectiveness as though it were a claim of trial court error regarding a motion to withdraw his guilty plea despite being instructed by this Court to review the claim under the PCRA?

2. Was Sarnor entitled to PCRA relief where he failed to satisfy his burden of establishing plea counsel's alleged ineffectiveness in connection with his decision to enter a guilty plea where counsel had no duty to investigate his claim that he was mistreated in prison and where counsel advised him that his plea could subject him to immigration consequences?

Commonwealth's Brief, at 3.

In appeals involving the grant of PCRA relief, we apply a well-settled standard of review:

When reviewing an order granting PCRA relief, we must determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. Moreover, we will not

- 4 -

disturb the findings of the PCRA court unless those findings have no support in the certified record.

**Commonwealth v. Rivera**, 154 A.3d 370, 377 (Pa. Super. 2017) (*en banc*) (citations omitted; formatting altered). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014).

The Commonwealth first contends that, despite being instructed to the contrary in a prior remand from this Court, **see Sarnor**, 2023 WL 8827933, at *3 ("It was error to review the issues **under any standard but the PCRA standard**.") (emphasis added), the court yet again erroneously evaluated Sarnor's submission through the lens of a post-sentence motion to withdraw his plea rather than conducting proper review of the petition under the auspice of an ineffective assistance of counsel claim. **See** 42 Pa.C.S. § 9543(a)(2)(ii) (requiring, under the PCRA, a petitioner to plead and prove that his "conviction or sentence resulted from . . . [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place[]").[2]

_____

[2] We note that, as a separate subsection and basis for relief under the PCRA, Section 9543(a)(2)(iii) specifically deals with unlawful inducement in a guilty plea where "the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S. §
*(Footnote Continued Next Page)*

We agree with the Commonwealth that the court did not conduct the proper inquiry in ascertaining Sarnor's right to relief. Although the court is, in the direct review context, correct that, in order to withdraw a post-sentence guilty plea, a defendant must demonstrate "manifest injustice[,]" *Commonwealth v. Schultz*, 477 A.2d 1328, 1329-1330 (Pa. 1984), **Sarnor has necessarily raised his claims pursuant to the PCRA through the lens of ineffective assistance of counsel**, as we have already decided. Consequently, Sarnor's claim "of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea." *Commonwealth v. Velazquez*, 216 A.3d 1146, 1149 (Pa. Super. 2019) (cleaned up). Ineffective assistance of counsel claims, in addition to our appellate review thereon, must be analyzed via the following precepts:

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative

---

9543(a)(2)(iii). As best as can be discerned, however, Sarnor does not, in any of his filings, profess his actual innocence.

"offered a potential for success substantially greater than the course actually pursued." Our review of counsel's performance "must be highly deferential." To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Commonwealth v. Brown*, 196 A.3d 130, 150-51 (Pa. 2018) (internal citations omitted). A failure to satisfy any of the three prongs is fatal to the petitioner's claim that counsel was ineffective. *See id.* at 151; *Commonwealth v. Midgley*, 289 A.3d 1111, 1119 (Pa. Super. 2023).

The court provides no analysis of any of the three above-mentioned prongs yet concludes that Sarnor's pre-plea prison conditions *and* the alleged incomplete advisement by counsel into the collateral immigration consequences of his plea agreement each independently rendered his plea involuntary, unknowing, and unintelligent so as to constitute a manifest injustice. Nevertheless, we, in our application of the correct standard on PCRA review, disagree; neither of these purported infirmities with his plea agreement provides a basis for relief. Simply put, Sarnor failed to demonstrate, under the circumstances described in his PCRA petition and through his and counsel's testimony at the subsequent hearing, that plea counsel, Melina Micich, Esquire, rendered ineffective assistance of counsel.

We first note that where the defendant enters a plea on counsel's advice, the voluntary and knowing nature of that plea turns on whether counsel's advice fell within the ambit of competence demanded of attorneys in criminal cases. *See Commonwealth v. Anderson*, 995 A.2d 1184, 1192 (Pa. Super.

2010).

Substantively, regarding Sarnor's pre-plea prison conditions,[3] an attorney's general duty to investigate "depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." *Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa. Super. 2013). Sarnor contends that his "emotional stability as it relates to the voluntariness of his plea[] was readily available to [his] counsel, as demonstrated by the fact that it was [his] counsel who actually presented witness testimony of [his former cellmate] regarding the coercive environment at the Delaware County Prison[.]" Memorandum of Law, 7/24/24, at 12. Sarnor avers that his conditions were "readily available for the asking[,] and [his] counsel had a duty to inquire further." *Id.*

Although Sarnor conveyed that he told his attorney that, on the day he entered into the guilty plea, he "was under duress" because he was a "minority in the jailhouse" and was "being bullied" and "pick[ed] on," N.T. PCRA Hearing, 6/24/24, at 11-12, there is no nexus in his testimony between those purported conditions and his volition when assenting to the plea. It does not strain credulity that one may be stressed, from various factors, while incarcerated;

_____

[3] Sarnor argued that, while in pre-plea incarceration, "he feared for his life every day of his confinement. This fear was brought on by bullying and threats leveled at [him] by other inmates at the Delaware County Prison because of his African nationality [*sic*], circumstances that [he] was powerless to abate as long as he remained confined there." Memorandum of Law, 7/24/24, at 8.

however, this emotional state does not, *ipso facto*, have any material impact on one's specific decision to enter into a plea agreement. Moreover, Sarnor's plea counsel testified that she had no knowledge of his purported conditions and related state of mind at the time he entered his plea. ***See id.*** at 187-88 (recalling that it was months after his plea agreement where plea counsel learned that Sarnor "was in fear of . . . his life, he was in danger in Delaware County and was depressed and under pressure[]"). Plea counsel did not recall having any pre-plea conversations with Sarnor involving his incarceration experiences at that time. ***See id.***

At his plea hearing, Sarnor testified that he did not suffer from any "physical, mental health[,] or emotional issues that would cause [him] to not understand" the plea agreement and further that no one threatened him in any manner or promised him anything in exchange for his plea. N.T. Plea Hearing, 7/14/22, at 5, 7. Having entered into a plea agreement, Sarnor "cannot now recant his representations made under oath to the court." ***Commonwealth v. Moser***, 921 A.2d 526, 532 (Pa. Super. 2007); ***see also Commonwealth v. Stork***, 737 A.2d 789, 790-91 (Pa. Super. 1999) ("A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.").

Sarnor's argument that such information about his pre-plea conditions was "readily available" is not self-proving nor inherent. There is no indication

that counsel has any inherent obligation to engage, *sua sponte*, in exacting inquiry into the day-to-day of a client's incarceration situation. Nor is there any obvious onus on counsel to tether, when otherwise unapparent, a client's stressed feelings emanating from his incarceration to the knowingness of his wholly separate guilty plea. To the extent that Sarnor did, in fact, discuss his incarceration conditions with his plea counsel prior to the deal being consummated, counsel acknowledged at the PCRA hearing that all clients are "under some level of stress due to the situation they find themselves in." N.T. PCRA Hearing, 6/24/24, at 84. Nevertheless, we conclude that, even assuming Sarnor's testimony to be true, absent more, merely that a client expresses negative feelings about their criminal case and the conditions of his or her confinement does not require counsel to conduct further research into a potential connection between those conditions and an otherwise unrelated plea agreement to ascertain that agreement's voluntariness. As such, not only is there no indication in the record that Sarnor's underlying claim has arguable merit, but also, we conclude that his plea counsel acted reasonably insofar as plea counsel had no duty to delve into the relationship between Sarnor's incarceration conditions and their impact on his mental state when entering into the at-issue plea agreement.

As to the immigration consequences of his plea agreement, the court concluded that, pursuant to **Padilla**, Sarnor's guilty plea was not knowing, intelligent, and voluntary entered because he was only advised there would

be "negative consequences" in the immigration domain due to his strangulation plea. Order, 8/27/24, at 2. Applying *Padilla*, the court found that "[a]dvising a defendant that he 'could' be deported is insufficient . . . when . . . the defendant is clearly subject to mandatory deportation." *Id.*

Under *Padilla*, "counsel must inform her client whether his plea carries a *risk* of deportation." 559 U.S. at 374 (emphasis added); *see also Commonwealth v. McDermitt*, 66 A.3d 810, 814 (Pa. Super. 2013) ("*Padilla* requires counsel to inform a defendant as to a risk of deportation, not as to its certainty."). Nevertheless, the onus is not on plea counsel to "know and state with certainty that the federal government will, in fact, initiate deportation proceedings." *Commonwealth v. Escobar*, 70 A.3d 838, 842 (Pa. Super. 2013). Instead, advisement of a plea carrying "a risk of deportation" has been found to be "within the range of competence demanded of attorneys in criminal cases." *Id.* Indeed, in *Escobar*, it was unknown "whether the U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carrying out Escobar's actual deportation" with him having pleaded guilty to possession with intent to deliver a controlled substance. *Id.* at 840. Therefore, under these circumstances, there was no burden placed on plea counsel to predict the future and state, with absolute certainty, that Sarnor would be deported. *But see, e.g.*, *Commonwealth v. Ramirez-Contreras*, 320 A.3d 756, 765 (Pa. Super. 2024) (finding plea counsel ineffective by merely mentioning that the

client "could" speak to an immigration attorney if he had concerns without determining his immigration status or even notifying him that pleading guilty to a sex offense carried the possibility of deportation); *Velazquez*, 216 A.3d at 1150-51 (determining counsel's advice to be constitutionally inadequate when he informed his client that he faced *no* risk of deportation upon pleading guilty to simple assault).

Here, as evidenced by the plea hearing, the written plea agreement, and Sarnor's PCRA hearing testimony, Sarnor was sufficiently apprised by his plea counsel, in accordance with the strictures of *Padilla* and its progeny, that his assent to the plea agreement carried with it the potential for immigration-related consequences, including deportation. At the plea hearing, Sarnor understood that by "entering into this negotiated plea agreement, pleading guilty, and being therefore convicted of a felony 2 strangulation **could have negative consequences** as far as [his] immigration status." N.T. Plea Hearing, 7/14/22, at 5 (emphasis added). Despite plea counsel's advice about potential risks regarding immigration status, Sarnor was "still willing to go forward with this plea." *Id.* In his written guilty plea colloquy, Sarnor was made aware, established by his initials affixed thereto, that by pleading guilty as a non-United States citizen, it may subject him to mandatory deportation and other adverse immigration consequences. *See* Written Guilty Plea Colloquy, 7/12/22, at ¶ 22. That paragraph also demonstrates that Sarnor's "attorney has answered, to [his] satisfaction, any question [he has] had

concerning adverse immigration consequences of this plea." *Id.*

At the PCRA hearing, Sarnor admitted that he was aware that his acquiescence to the plea meant that there would be some possible impact to him in the immigration context. *See* N.T. PCRA Hearing, 6/24/24, at 45. Plea counsel knew from the beginning of her representation that Sarnor was not a United States citizen. *See id.* at 73. Plea counsel explained to Sarnor that, should he be convicted or enter into a guilty plea for certain offenses, that it could "result in deportation." *Id.* at 74-75. Plea counsel specifically told Sarnor that "strangulation graded as a felony of the second degree under Pennsylvania law[] could result in deportation and very likely[] would result in deportation." *Id.* at 75. Plea counsel conveyed to Sarnor that strangulation was "considered a crime of violence[]" and that "there are certain factors that the federal government takes into consideration when deciding . . . whether to deport or not." *Id.*

Sarnor does not allege that his plea counsel provided incorrect advice or otherwise misled him by communicating to him that his plea carried no immigration consequences. However, in placing the burden on counsel to express to Sarnor the absolute certainty of his deportation, the court, without citation, indicates that Sarnor would be "clearly subject to mandatory deportation." Order, 8/27/24, at 2. Nevertheless, the court fails to put forth a legal basis as to why his deportation would be mandatory or, assuming that to be true, why his plea counsel should have known that deportation was *fait*

*accompli*, i.e., that the consequences would be "truly clear" and "succinct and straightforward." ***Padilla***, 559 U.S. at 369. We find that, in the absence of applicable authority "announcing a guarantee that actual deportation proceedings are a certainty[,]" ***Escobar***, 70 A.3d at 842, plea counsel complied with ***Padilla*** insofar as Sarnor was made aware of the possibility of deportation.

Accordingly, because counsel's advice was not deficient under ***Padilla***, and there is no merit to the contention that Sarnor should have been advised differently, he has failed to demonstrate that counsel was ineffective on this basis, too.

Order reversed. Case remanded with instructions to reinstate conviction and judgment of sentence. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2025