J-S47003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT DUNKOWSKI | : | |
| | : | |
| Appellant | : | No. 1507 EDA 2025 |

Appeal from the PCRA Order Entered May 14, 2025
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000225-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:         **FILED MARCH 9, 2026**

Albert Dunkowski appeals *pro se* from the order of the Court of Common Pleas of Bucks County dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA")[1], without a hearing. Dunkowski argues that he is entitled to relief on his claims of sufficiency of the evidence and ineffective assistance of counsel. After careful review, we affirm the PCRA court's order dismissing his PCRA petition. However, for the first time on appeal, Dunkowski argues his sentence was illegal because the sentencing court failed to consider his recidivism risk reduction incentive ("RRRI")[2] eligibility. He is entitled to relief on this claim. Therefore, we affirm the order dismissing the PCRA petition and remand for the sentencing court to consider his RRRI eligibility.

_____

[1] 42 Pa.C.S.A. §§ 9541–9546.

[2] 61 Pa.C.S.A. §§ 4501–4512.

This Court previously summarized the facts related to Dunkowski's underlying convictions. *See Commonwealth v. Dunkowski*, No. 1047 EDA 2022, 2023 WL 5129187 (Pa. Super. filed Aug. 10, 2023) (unpublished memorandum).

In August 2019, police discovered Dunkowski and his wife inhabiting an automobile that was parked in the lot of the Woodbourn Train Station in Middletown Township. Upon arriving at the scene, officers observed Dunkowski lying face down in the grass. His wife was slumped over in the front passenger seat. Four children occupied the rear seat area of the vehicle. A cat was also living in the car. Officers noted that the vehicle was cluttered with trash, clothing, food, and debris. They also noticed the strong odor of bodily excretions, cigarettes, and rotting food. Due to the visibly poor physical condition of the children, the officers called Emergency Medical Services ("EMS"). EMS took protective custody of the children and transported them to the hospital.

The trial court offered the following review of the condition of the various children that were in the parental care of Dunkowski and his wife:

At [the hospital], treating physicians made the following assessments: N.D., who suffered from cerebral palsy, was thirteen years old and weighed about ninety pounds. She was nonverbal, had a feeding tube, and started to develop bedsores from remaining in the same position for a significant amount of time. J.D. was four years old and weighed about forty pounds. She was still in diapers as she was not yet trained to go to the bathroom on her own and she needed extensive dental work—a root canal, a crown, and three fillings. Female L.D. was five years old and weighed about forty-eight pounds. She was also still in diapers and needed nine root canals, nine crowns, one filling, and four teeth pulled. She had never been to school. Male L.D. was nine years old and weighed about sixty pounds. He had bilateral clubfeet ... as well as undescended testicles .... Both required procedures—several to improve Male L.D.'s clubfeet and one to surgically descend his testicles.

- 2 -

Male L.D. also had such a severe, significant amount of dried, caked-on fecal matter on his diaper that when the doctor pulled it back, Male L.D.'s skin became raw and red. Dr. Torradas, the physician who treated the children, testified that, over the course of his lengthy career, he had never seen anything like what he saw on August 27, 2019.

That same day, [Dunkowski] and [his wife] spoke with Detective Brian Hyams (hereinafter "Detective Hyams") and told him that none of the four children found were enrolled in school. Detective Hyams asked if they had any additional children and they provided the names of three more minors in their care. They relayed that one child, R.[D]., was staying with a friend at the time, but neither [Dunkowski] nor [his wife] could provide any contact information to get in touch with her. Authorities eventually found R.[D]. and discovered that she missed almost the entire 2018-2019 school year and had an abscess in her tooth that rendered her unable to chew and required significant dental surgery. Fortunately, R.D did not require immediate, emergency medical treatment.

Shortly thereafter, Detective Hyams discovered that [Dunkowski] and [his wife] had an eighth minor child—S.D.—they did not mention when previously asked. After some investigation, Detective Hyams located S.D. and [Dunkowski] agreed to "turn her over" to authorities in a McDonald's parking lot. S.D. "appeared to be very thin, small, disheveled. Her hair was very short as if it wasn't growing, or falling out. Her eyes were puffy underneath. She was very, very quiet, almost like she was lethargic." Doctors later determined she weighed about forty-two pounds. S.D. was unable to walk because her legs were bent in a seated position. She also still needed diapers—at thirteen years old—because [Dunkowski] and [his wife] never taught her how to use the bathroom. Authorities immediately took protective custody of S.D. and transported her to [the hospital] with the other children.

*Id.* at **1-2 (quoting Trial Court Opinion, 6/23/22, at 2-4) (alterations in original).

Dunkowski and his wife Christine were both charged with six counts of endangering the welfare of children ("EWOC").[3] A consolidated jury trial commenced on October 4, 2021. On the third day of trial, Dunkowski and his wife failed to appear. The trial proceeded *in abstentia*. Dunkowski was convicted of three counts of EWOC. For each count, he was sentenced to three to seven years, consecutively, for an aggregate term of incarceration of 9 to 21 years.[4] He filed a timely post-sentence motion which was denied. Dunkowski filed a direct appeal, and this Court affirmed his judgment of sentence. *See Dunkowski*, 2023 WL 5129187, at *8.

Thereafter,

On July 29, 2024, [Dunkowski] filed his first PCRA Petition, Th[e PCRA c]ourt appointed Stuart Wilder, Esquire to represent [Dunkowski], but on September 4, 2024, Mr. Wilder filed a Motion to Allow [Dunkowski] to Represent Himself in his Petition for PCRA Relief. The Petition stated that [Dunkowski] wished to represent himself, and after a hearing on the matter where [Dunkowski] advised th[e PCRA c]ourt of the same, th[e c]ourt granted [Dunkowski's] Motion on December 18, 2024.

_____

[3] 18 Pa.C.S.A. § 4304.

[4] Dunkowski's wife, Christine Dunkowski, was his co-defendant at trial. She was convicted of the same charges and was sentenced to 8 to 21 years' incarceration. Her conviction was affirmed on direct appeal. *See Commonwealth v. Dunkowski*, No. 1990 EDA 2022, 2023 WL 4397323 (Pa. Super. filed July 7, 2023) (unpublished memorandum). Her *pro se* appeal of the denial of her first PCRA petition is pending at docket number 1220 EDA 2025.

On January 13, 2025, [Dunkowski] filed his *pro se* Amended Petition for Post Conviction Collateral Relief, wherein he challenged the sufficiency of the evidence presented at trial and alleged th[e sentencing c]ourt abused its discretion when imposing sentence and that his trial counsel was ineffective for: (1) not "moving for dismissal of the indictment" during said sentencing; (2) not interviewing his children in preparation for trial; and (3) not filing a successful direct appeal. On February 11, 2025, the Commonwealth filed its response to [Dunkowski's] Amended PCRA Petition. On February 24, 2025, th[e PCRA c]ourt issued a Notice of Intent to Dismiss Pursuant to Pa. R. Crim. P. 907 and stated that the claims were without merit and did not warrant an evidentiary hearing. On March 11, 2025, [Dunkowski] filed an Objection to Notice of Intent to Dismiss. On May 14, 2025, th[e PCRA c]ourt formally dismissed [Dunkowski's] *pro se* Amended PCRA Petition. On June 2, 2025, [Dunkowski] filed [a] Notice of Appeal to the Superior Court.

PCRA Court Opinion, 6/20/25, at 4-5.

Both Dunkowski and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925. **See** Pa.R.A.P. 1925(a)-(b).

Dunkowski raises the following issues.

1. Did the Trial Court err in not correcting, at sentencing, the jury's verdict, once the [c]ourt became aware that there was no intent by [Dunkowski] to commit the offenses charged?

2. Was [Dunkowski's] trial counsel ineffective for not moving for a dismissal of the indictment and conviction due to the judge's comments at sentencing?

3. Was Trial Counsel ineffective for failing to interview [Dunkowski's] children at all, and thus was unprepared for trial without their version of events during their homeless period?

4. Was the term of confinement for Endangering the Welfare of Children illegal since the court failed to make a RRRI determination at the time of sentencing?

Appellant's Brief, at 4 (brackets omitted).

"The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Williams**, 244 A.3d 1281, 1286 (Pa. Super. 2021).

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

**Id.** at 1287 (brackets and citation omitted).

In his first issue Dunkowski purports to raise a sufficiency of the evidence challenge. Specifically, he argues that the Commonwealth failed to establish that he intentionally neglected his children. **See** Appellant's Brief, at 14-19. However, it is well-settled that a claim challenging the sufficiency of the evidence is not cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543; **Commonwealth v. Mudge**, No. 919 WDA 2021, 2022 WL 2813608, at *5 (Pa. Super. filed July 19, 2022) (unpublished memorandum) ("challenge to sufficiency of evidence . . . is not cognizable under PCRA.").[5] Moreover, it is waived. **See** 42 Pa.C.S.A. § 9544(b) ("an issue is waived if the petitioner could

---

[5] Unpublished decisions filed after May 1, 2019 may be relied upon for their persuasive value.

have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). Therefore, Dunkowski's first issue does not merit relief.

Next, Dunkowski claims that counsel was ineffective for failing to seek dismissal of his convictions because the evidence was insufficient. In support of his claim that counsel had reason to seek dismissal, he points to the sentencing court's comment at sentencing, "[w]e know that you did not set out to do this intentionally, at least I don't think you did[,]" as indicative of him lacking the requisite *mens rea*. **See** Appellant's Brief, at 21; N.T., 2/7/22, at 43. Additionally, he states appointed counsel was aware of email correspondence between the prosecutor and Chief Deputy Public Defender that Dunkowski claims indicates that they agreed to a mitigated sentence for him, which proves his lack of culpability. **See** Appellant's Brief, at 20-21. Based on the foregoing, he argues his counsel was ineffective for failing to file a motion to dismiss because the evidence was insufficient to prove his guilt. **See id.** at 19-22.

Although sufficiency of the evidence challenges are not cognizable under the PCRA, claims alleging ineffective assistance of counsel for failing to raise a sufficiency challenge are cognizable. **See Commonwealth v. Livingston**, No. 430 EDA 2021, 2022 WL 678933, at **5-6 (Pa. Super. filed Mar. 8, 2022) (unpublished memorandum) (addressing a PCRA claim that counsel was ineffective for failing to raise a sufficiency of the evidence claim).

"Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Commonwealth v. Ramirez-Contreras*, 320 A.3d 756, 760 (Pa. Super. 2024) (citation omitted). "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stultz*, 114 A.3d 865, 880 (Pa. Super. 2015) (citation omitted). "[I]f a claim fails under any required element, we may dismiss the claim on that basis." *Commonwealth v. Kapellusch*, 323 A.3d 837, 847 (Pa. Super. 2024) (citation omitted).

As a preliminary matter, we observe that issues raised for the first time on appeal are waived. *See* Pa.R.A.P. 302(a). Additionally, "for purposes of appellate review, what is not in the certified record does not exist." *Commonwealth v. Garvin*, 50 A.3d 694, 700 (Pa. Super. 2012) (citation omitted).

Here, Dunkowski concedes that he was provided the emails by his court appointed counsel on December 17, 2024, and that he filed his amended PCRA petition on January 13, 2025. *See* Reply Brief, at 7-8. However, he did not attach the emails to his PCRA petition, they are not otherwise in the certified record and are instead attached to his appellate brief. As such, we cannot

consider the emails.[6] Therefore, we limit our review to Dunkowski's claim that counsel was ineffective for failing to move for dismissal based on the sentencing court's comment at sentencing.

As the Commonwealth points out, the required *mens rea* for EWOC is "knowingly" not "intentionally." **See** 18 Pa.C.S.A. § 4304(a)(1) ("[a] parent . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support."). "To be convicted under [Section 4304], the Commonwealth must prove a knowing violation of a duty of care." **Commonwealth v. Vela-Garrett**, 251 A.3d 811, 815 (Pa. Super. 2021) (internal quotation marks and citation omitted).

The PCRA court aptly summarized why the sentencing court's statement did not indicate a lack of sufficient evidence to sustain Dunkowski's EWOC convictions.

> When read in full context, it is clear th[e sentencing c]ourt was referring to the fact that [Dunkowski] did not have unwavering malicious intent to viciously harm his children. It does not refer to the fact that [Dunkowski] knowingly neglected his children by failing to meet their basic needs for things such as food, water, and hygiene. The evidence at trial proved beyond a reasonable doubt that [Dunkowski] knew his failure to provide such things would result in school aged children who were so weak they could barely function and who were so developmentally delayed they lacked basic skills such as the ability to use a toilet. The testimony and photographs admitted at trial proved beyond a reasonable doubt that [Dunkowski's] children were so obviously infirm that

_____

[6] We briefly note that our cursory review of the email correspondence indicates that they occurred before trial and thus, were seemingly part of plea negotiations, not an agreement as to sentencing. Dunkowski did not enter a guilty plea and was convicted at trial.

even [Dunkowski] felt the need to hide the existence of his eighth child from authorities. Therefore, a review of the record makes clear there is no doubt as to [Dunkowski's] guilt nor is that guilt negated by [Dunkowski's] attempt to misconstrue a statement made by th[e sentencing c]ourt at sentencing.

PCRA Court Opinion, 6/20/25, at 7-8.

As explained by the PCRA court, the sentencing court's comment did not negate the sufficient evidence to sustain Dunkowski's EWOC convictions. Because Dunkowski's claim lacks merit, counsel cannot be found to be ineffective. **See Commonwealth v. Staton**, 632 Pa. 400, 427, 120 A.3d 277, 293 (Pa. 2015) (holding that counsel cannot be deemed ineffective for failing to pursue a meritless claim). Therefore, Dunkowski is not entitled to relief on his second claim.

In his third issue, Dunkowski claims his trial counsel was ineffective for failing to call his eldest daughter and son (who are twins), J.D. and M.D., to testify on his behalf.[7] **See** Appellant's Brief, at 22-24. He argues that counsel was aware of their existence and willingness to testify because they were seated outside the courtroom during trial and had spoken with defense counsel. **See id.** Further, he argues that he was prejudiced because J.D. and M.D. would have testified to their family's homelessness and thus their father's lack of intent to harm his children. **See id.** at 24. The Commonwealth argues that in his PCRA petition Dunkowski cited no authority and merely baldly

---

[7] J.D. and M.D. were seventeen at the time of trial and were the only two children for which Dunkowski and his wife were not facing EWOC charges.

asserted that he was prejudiced by counsel's failure to call his two children as witnesses. **See** Appellee's Brief, at 31.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. **Commonwealth v. Johnson**, 600 Pa. 329, 966 A.2d 523, 536 (2009); **Commonwealth v. Clark**, 599 Pa. 204, 961 A.2d 80, 90 (2008). To demonstrate **Strickland** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1134 (2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. **Commonwealth v. Auker**, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." **Id.**

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012).

The PCRA court aptly summarized how Dunkowski failed to establish prejudice.

> [Dunkowski] attached two unsigned, unverified "emails" to his Amended PCRA Petition that are purportedly authored by his two (then minor) children, J.D. and M.D. In sum, the letters state that [Dunkowski] was merely trying to do his best amid serious financial troubles and that they feel the sentence imposed by th[e sentencing c]ourt is too severe. In his Amended PCRA Petition, [Dunkowski] argues that these letters prove Trial Counsel should have called J.D. and M.D. as witnesses. However, [Dunkowski] does [not] address the fact that neither J.D. nor M.D. were in the vehicle when the Victims were found and [Dunkowski] was arrested. He does not address the fact that they have no first-hand knowledge of the situation as they were both staying with

- 11 -

friends at the time (as they explain in their letters). In fact, [Dunkowski] even states that Trial Counsel decided not to call them as witnesses as they "would be a liability, and the D.A. would take them apart." Ironically, [Dunkowski] does not even realize that his own argument undermines his claim. It is clear that even if [Dunkowski's] claim had merit (which th[e PCRA c]ourt believes it does not), Trial Counsel had a reasonable basis to decline to present J.D. and M.D. as witnesses. Even if they were presented, the Commonwealth could have easily challenged and discredited their testimony with the plethora of photographs and statements from individuals who had firsthand knowledge of the incident as they were actually present at the scene of the crime.

. . . .

[Further], it is obvious that, not only would J.D. and M.D.'s testimony have not helped [Dunkowski], it would have most likely actually *hurt* his defense.

PCRA Court Opinion, 6/20/25, at 15-16.

We agree with the PCRA court's assessment. Dunkowski has failed to establish how he was prejudiced by trial counsel's failure to call J.D. and M.D. as witnesses where their testimony would not have been helpful to his defense. Moreover, as observed by the PCRA court, counsel had a reasonable basis to decline to present them. Therefore, Dunkowski's ineffective assistance of counsel claim fails.

Moving away from the PCRA petition, in his final issue, Dunkowski raises the sentencing court's failure to determine his RRRI eligibility for the first time. *See* Appellant's Brief, at 5, 25-29.

Under the RRRI Act, "[a]t the time of sentencing, the court shall make a determination whether the defendant is an eligible offender." 61 Pa.C.S.A. § 4505(a). A sentencing court's failure to assess a defendant's RRRI eligibility

implicates the legality of the sentence and may be raised for the first time in PCRA review. **See Commonwealth v. Finnecy**, 249 A.3d 903, 912 (Pa. 2021); **see also Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023) ("An appellate court may address, and even raise *sua sponte*, challenges to the legality of an appellant's sentence even if the issue [were] not preserved in the trial court.") (citation omitted).

The Commonwealth concedes that the sentencing court failed to consider Dunkowski's RRRI eligibility, which our review of the sentencing transcript confirms. **See** Appellee's Brief, at 16, 36-38. We commend the Commonwealth for its candor in this regard. As the Commonwealth correctly observes in its brief, although Dunkowski did not raise this issue before the PCRA court and this failure would ordinarily result in waiver under Pa.R.A.P. 302, issues pertaining to legality of sentence can never be waived. It is unfortunate that the PCRA court was not given the opportunity to address this issue while the case was still before the PCRA court.

Thus, we agree that a remand is necessary solely for the sentencing court to make the RRRI determination. Hence, in summary we affirm the PCRA court's order dismissing Dunkowski's PCRA petition and vacate and remand the judgment of sentence for the court's limited purpose of making a RRRI determination at sentencing.

Order affirmed. Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/9/2026

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

        v.

ALBERT DUNKOWSKI

:   No. CP-09-0000225-2020

## OPINION

Defendant, Albert Dunkowski (hereinafter "Appellant"), appeals this Court's denial of his

Petition for Relief pursuant to the Post Conviction Relief Act (hereinafter "PCRA") on May 14,

2025. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case were discussed at length in this Court's June 23, 2022 Opinion and

are set forth as follows:

> The incident underlying Appellant's convictions stem from an investigation that began on August 27, 2019. Officer Scott Patrick (hereinafter "Officer Patrick") was on patrol when he noticed a vehicle parked in the very rear of the parking lot of the Woodbourne Train Station, located in Middletown Township, Bucks County, Pennsylvania. N.T. 10/4/2021, pp. 32-33. He called for additional Officers—Officer Samantha Weed (hereinafter "Officer Weed") and Officer Christopher Viscardi (hereinafter "Officer Viscardi")— and as they approached, Officer Patrick noticed Appellant lying face-down in the grass, about ten to fifteen yards away. Id. at 34. Appellant told Officer Patrick that he was going to the bathroom and did not want to be seen. Id. Officer Patrick then came across Christine Dunkowski (hereinafter "Co-Defendant"), Appellant's wife. She sat slumped over in the front passenger seat with three children laying in the rear seats of the vehicle, which was cluttered with trash, personal items, clothing, food, and debris. Id. at pp. 36, 55. As the Officers opened the door to speak with Co-Defendant, they immediately smelled a strong odor of urine, soiled diapers, stale cigarettes, and rotting food. Id. It was then that they noticed a fourth child on the floor, completely covered in trash. Id. at p. 37. Officer Weed also discovered a cat in the back trunk of the vehicle. Id. at p. 55.

1

Alarmed at the children's emaciated state, the Officers immediately called Emergency Medical Services (hereinafter "EMS") to the scene. Id. They testified that the children, later identified as N.D., J.D., L.D. (hereinafter "Female L.D.") and L.D. (hereinafter "Male L.D."), looked gravely ill, were covered in feces, urine, and bugs, and appeared malnourished. N.T. 10/4/2021, pp. 55-57; N.T. 10/5/21, pp. 7, 17. When EMS arrived, Co-Defendant refused to let them take the children to the hospital for treatment. N.T. 10/4/2021, p. 39. Officer Patrick and EMS had no choice but to take protective custody of the children, and they were immediately transported to St. Mary's Medical Center (hereinafter "St. Mary's"). Id.

At St. Mary's, treating physicians made the following assessments: N.D., who suffered from cerebral palsy, was thirteen years old and weighed about ninety pounds. N.T. 10/5/2021, p. 20. She was nonverbal, had a feeding tube, and started to develop bedsores from remaining in the same position for a significant amount of time. Id. at p. 36. J.D. was four years old and weighed about forty pounds. Id. at p. 23. She was still in diapers as she was not yet trained to go to the bathroom on her own and she needed extensive dental work – a root canal, a crown, and three fillings. Id. at pp. 91, 95. Female L.D. was five years old and weighed about forty-eight pounds. Id. at pp. 25-26. She was also still in diapers and needed nine root canals, nine crowns, one filling, and four teeth pulled. Id. at p. 96. She had never been to school. Id. Male L.D. was nine years old and weighed about sixty pounds. Id. at p. 24. He had bilateral clubfeet (meaning his legs and feet were turned inwards) as well as undescended testicles (which normally descend before age one). Both required procedures—several to improve Male L.D.'s clubfeet and one to surgically descend his testicles. Id. at pp. 96-97, 104. Male L.D. also had such a severe, significant amount of dried, caked-on fecal matter on his diaper that when the doctor pulled it back, Male L.D.'s skin became raw and red. Id. at p. 39. Dr. Torradas, the physician who treated the children, testified that, over the course of his lengthy career, he had never seen anything like what he saw on August 27, 2019. Id. at p. 40.

That same day, Appellant and Co-Defendant spoke with Detective Brian Hyams (hereinafter "Detective Hyams") and told him that none of the four children found were enrolled in school. N.T. 10/4/2021, pp. 70-71. Detective Hyams asked if they had any additional children and they provided the names of three more minors in their care. Id. at p. 72. They relayed that one child, R.M., was staying with a friend at the time, but neither Appellant nor Co-Defendant could provide any contact information to get in touch with her. Id. at p. 74. Authorities eventually found R.M. and discovered that she missed almost the entire 2018-2019 school year and had an abscess in her tooth that rendered her unable to chew and required significant dental surgery. N.T. 10/5/2021, pp. 98-98. Fortunately, R.D. did not require immediate, emergency medical treatment.

Shortly thereafter, Detective Hyams discovered that Appellant and Co-Defendant had an eighth minor child—S.D.— they did not mention when previously asked. N.T. 10/4/2021, pp. 75-76. After some investigation, Detective Hyams located S.D.

2

and Appellant agreed to "turn her over" to authorities in a McDonald's parking lot. Id. at p. 79. S.D. "appeared to be very thin, small, disheveled. Her hair was very short as if it wasn't growing, or falling out. Her eyes were puffy underneath. She was very, very quiet, almost like she was lethargic." N.T. 10/5/2021, p. 83. Doctors later determined she weighed about forty-two pounds. Id. at p. 146. S.D. was unable to walk because her legs were bent and stuck in a seated position. Id. at p. 84. She also still needed diapers—at thirteen years old—because Appellant and Co-Defendant never taught her how to use the bathroom. Id. at p. 101. Authorities immediately took protective custody of S.D. and transported her to St. Mary's with the other children. Id. at p. 83.

From St. Mary's, all five children were transported to St. Christopher's Hospital for Children (hereinafter "St. Christopher's"). N.T. 10/5/2021, pp. 47, 85. While at St. Christopher's, Bucks County Children and Youth Caseworker Sarah Santin (hereinafter "Ms. Santin") met with the children to investigate allegations of abuse and neglect. Id. at pp. 58-59. Ms. Santin noted that N.D., similar to S.D., could not fully extend her legs and had severely chapped lips. Id. at p. 60. She testified that all of the children appeared thin, had fine and thinning hair, and had severe dry skin. Id. at p. 61. Two of the children, N.D. and S.D., remained admitted to St. Christopher's for several weeks. Id. at p. 67. S.D. required intensive physical therapy to regain the ability to walk. Id. at pp. 149-50. Ultimately, doctors determined that S.D.'s and N.D's issues were a result of chronic neglect—i.e. neglect over months. Id. Therefore, Ms. Santin believed that the children were unsafe with Appellant and Co-Defendant and petitioned a judge to take emergency custody of the children. Id. at p. 65. That Petition was granted and the children were placed in foster homes. Id.

On September 10, 2019, Appellant was charged with six counts of Endangering the Welfare of Children in connection with the state of the minor children. On January 9, 2020, Appellant waived his Preliminary Hearing and agreed to enter a guilty plea in exchange for the Commonwealth amending the charges to only one count of Endangering the Welfare of Children. However, shortly after, Appellant indicated that he wished to proceed with a jury trial and the Commonwealth filed a Motion to Amend the Criminal Information to add back the five additional Endangering the Welfare of Children Counts, which this Court granted on April 29, 2021. Therefore, at the time of trial, Appellant was charged with six counts of Endangering the Welfare of Children—two graded as felonies of the second degree and four graded as felonies of the third degree[1].

Appellant's jury trial began on October 4, 2021 and lasted for three days. At the end of the second day, October 5, 2021, Appellant testified on direct examination. This Court then recessed the proceedings for the day and Ordered: (1) the jury to appear at 9:30 A.M.; and (2) Appellant and Co-Defendant to appear at 9:00 A.M. the following day. N.T. 10/5/21, p. 222. However, Appellant and Co-Defendant both failed to appear, and a bench warrant was issued on October 6, 2021. After

---

[1] 18 Pa.C.S. § 4304(a)(1).

3

Defense Counsel and the Commonwealth made numerous, unsuccessful attempts to contact Appellant and Co-Defendant using all available resources, this Court ruled that the trial would continue in absentia. N.T. 10/6/21, p. 30. Later that same day, the jury found Appellant guilty of three of the six counts of Endangering the Welfare of Children—all felonies of the third degree.

Almost a month later, Appellant was located out of state, and, on November 3, 2021, Judge Rea B. Boylan rescinded the bench warrant and Ordered Appellant be held in the Bucks County Correctional Facility until sentencing. On February 7, 2022, this Court sentenced Appellant to no less than three (3) years to no more than seven (7) years in a state correctional institution on each of the three counts, to run consecutively to each other. Therefore, this Court imposed an aggregate sentence of no less than nine (9) years to no more than (21) years in a state correctional institution. Appellant was also Ordered to have no contact with S.D., L.D., and N.D.. This sentence was above the aggravated range of Appellant's sentencing guidelines.

Commonwealth v. Dunkowski, CP-09-CR-0000225-2020, pp. 1-5 (Bucks Cty. June 23, 2022).

On April 1, 2022, Appellant filed a direct appeal to the Superior Court of Pennsylvania, which affirmed this Court's judgment of sentence on August 10, 2023. On July 29, 2024, Appellant filed his first PCRA Petition. This Court appointed Stuart Wilder, Esquire to represent Appellant, but on September 4, 2024, Mr. Wilder filed a Motion to Allow Defendant to Represent Himself in his Petition for PCRA Relief. The Petition stated that Appellant wished to represent himself, and after a hearing on the matter where Appellant advised this Court of the same, this Court granted Appellant's Motion on December 18, 2024.

On January 13, 2025, Appellant filed his *pro se* Amended Petition for Post Conviction Collateral Relief, wherein he challenged the sufficiency of the evidence presented at trial and alleged this Court abused its discretion when imposing sentence and that his trial counsel was ineffective for: (1) not "moving for dismissal of the indictment" during said sentencing; (2) not interviewing his children in preparation for trial; and (3) not filing a successful direct appeal. On February 11, 2025, the Commonwealth filed its response to Appellant's Amended PCRA Petition. On February 24, 2025, this Court issued a Notice of Intent to Dismiss Pursuant to Pa. R. Crim. P.

4

907 and stated that the claims were without merit and did not warrant an evidentiary hearing. On March 11, 2025, Appellant filed an Objection to Notice of Intent to Dismiss. On May 14, 2025, this Court formally dismissed Appellant's *pro se* Amended PCRA Petition. On June 2, 2025, Appellant filed Notice of Appeal to the Superior Court.

## STATEMENT OF MATTERS COMPLAINED ON APPEAL

On June 2, 2025, at the time of filing Notice of Appeal, Appellant also filed a Concise Statement of Matters Complained of on Appeal,[2] alleging the following, *verbatim*:

> a) [Did] the trial court clearly err in not correcting, at sentencing, the jury's verdict, once the court became aware that there was no intent by the Petitioner to commit the offenses charged?
>
> Suggested Response: In the Affirmative

---

[2] On June 11, 2025, Appellant filed, without leave of Court, an Amended Concise Statement which raised one additional issue for review:

> [Was] Judge Wallace H. Bateman, Jr. complicit in the erroneous transmittal of the fraudulent information received by the Department of Homeland Security in deceptively listing (4) counts of "Cruelty Toward Child", as the convictions won in this case, which exist only under Florida's Crime Code Stat. § 827.071(3), and is a charge that is indicative of sexual abuse.

This Court notes that this additional allegation of error is procedurally deficient. First, Appellant did not request leave of court to file an Amended Concise Statement. Second, Appellant has not previously raised this issue before the filing of his Amended Concise Statement. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

> "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. Commonwealth v. Powell, 956 A.2d 406, 423 (Pa. 2008); Tindall v. Friedman, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.")

Commonwealth v. Smith, 213 A.3d 307, 309 (Pa. Super. 2019) (quoting Commonwealth v. Rodriguez, 174 A.3d 1130, 1145 (Pa. Super. 2017). Further, notwithstanding these procedural defects, this Court is unable to address this allegation as it is incoherent and confusing. Rule 1925(b)(ii) specifically states that "[t]he Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Because Appellant has raised an unintelligible issue, this Court is unable to engage in a meaningful analysis and believes that Appellant "ha[s] deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[s] thereby effectively precluded appellate review of the issues [he] now seek[s] to raise." Kanter v. Epstein, 866 A.2d 394, 401 (Pa. Super. 2004). Appellant was convicted of Endangering the Welfare of Children, in violation of Pennsylvania statute 18 Pa.C.S. § 4304(a)(1). Appellant fails to explain, nor can this Court discern, how a Florida statute is relevant and at issue in the instant matter.

5

b) [Did] the sentencing court improperly position itself as factfinder during the sentencing phase and then hand-down a harsh sentence?

Suggested Response: In the Affirmative

c) [Was] Petitioner's trial counsel ineffective for not moving for a dismissal of the indictment and conviction due to the judge's comments at sentencing, making the point that without a culpable mens rea, the guilty act is negated?

Suggested Response: In the Affirmative

d) [Was] trial counsel ineffective for failing to interview Petitioner's children at all, and thus was unprepared for trial without their version of events [as they occurred] during their homeless period?

Suggested Response: In the Affirmative

e) [Was] Direct Appeal Counsel ineffective for not addressing the issues contained herein causal to a Layered ineffectiveness issue?

Suggested Response: In the Affirmative

## ANALYSIS

I.   *This Court did not err by not "correcting, at sentencing, the jury's verdict."*

Appellant argues this Court had a duty to correct the jury's verdict at sentencing after, according to Appellant, acknowledging that Appellant did not possess the requisite *mens rea* for the crimes for which he was convicted. This argument fails.

First, this Court notes that Appellant's claim, which can be categorized as a challenge to the sufficiency of the evidence presented at trial, is not cognizable under the PCRA. See 42 Pa.C.S. §9543; Commonwealth v. Bell, 706 A.2d 855, 861 (Pa. Super. 1998) ("[Appellant] essentially raises sufficiency of the evidence claims, not cognizable in the context of a PCRA petition, 42 Pa.C.S.A. § 9543."); and Commonwealth v. Price, 876 A.2d 988, 995 (Pa. Super. 2005) ("Instantly, Appellant presents his claim to us on appeal as if on direct appeal, and without any ineffectiveness of counsel analysis. Further, Appellant does not claim a constitutional violation,

6

an unlawfully induced guilty plea, the improper obstruction of the right to appeal, the existence of after-discovered exculpatory evidence, the imposition of a sentence greater than the lawful maximum, or a proceeding in a tribunal without jurisdiction. Instead, Appellant directly challenges the sufficiency of the evidence to support his SVP classification and seeks removal of the collateral consequences of his guilty plea conviction under Megan's Law II. Therefore, Appellant's first issue as presented is not a cognizable claim under the PCRA.") (citations omitted). Therefore, it is clear that Appellant may not raise this claim at this juncture.

Second, notwithstanding the fact that the claim is improperly raised, the underlying claim is wholly without merit as well. Appellant was convicted of three counts of Endangering the Welfare of Children in violation of 18 Pa.C.S. § 4304, which states, in pertinent part:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he **knowingly** endangers the welfare of the child by violating a duty of care, protection or support.

(emphasis added). The Pennsylvania Legislature has clarified that:

> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Id. § 302(b)(2). He asserts that this Court found that this *mens rea* was not met when it stated, at sentencing that "[w]e know that you did not set out to do this intentionally, at least I don't think you did." N.T. 2/7/2022, p. 43. However, Appellant's reliance in this quote, which is taken out of context, is wholly misguided. This Court made the statement when explaining its rationale for Appellant's sentence and listing the factors it considered to be in Appellant's favor. When read in

7

full context, it is clear this Court was referring to the fact that Appellant did not have unwavering malicious intent to viciously harm his children. It does **not** refer to the fact that Appellant knowingly neglected his children by failing to meet their basic needs for things such as food, water, and hygiene. The evidence at trial proved beyond a reasonable doubt that Appellant knew his failure to provide such things would result in school aged children who were so weak they could barely function and who were so developmentally delayed they lacked basic skills such as the ability to use a toilet. The testimony and photographs admitted at trial proved beyond a reasonable doubt that Appellant's children were so obviously infirm that even Appellant felt the need to hide the existence of his eighth child from authorities. Therefore, a review of the record makes clear there is no doubt as to Appellant's guilt nor is that guilt negated by Appellant's attempt to misconstrue a statement made by this Court at sentencing. As such, Appellant's claim is meritless.

II. *This Court did not abuse its discretion when sentencing Appellant.*

Next, Appellant argues that this Court abused its discretion when sentencing Appellant. Again, this claim is not only not cognizable under the PCRA, but it is wholly without merit and had been previously addressed and disposed of by both this Court and the Superior Court of Pennsylvania.

First, Pennsylvania appellate courts have repeatedly held that "[r]equests for relief with respect to the discretionary aspects of sentence are not cognizable in PCRA proceedings." Commonwealth v. Wrecks, 934 A.2d 1287, 1289 (Pa. Super. 2007). Thus, as with Appellant's first claim, this claim is also improperly raised in his PCRA Petition.

Second, not withstanding this fatal defect, this Court also addressed this claim on direct appeal and its reasoning was affirmed and upheld by the Superior Court of Pennsylvania. This

8

Court's analysis of relevant case law and its reasons for Appellant's sentence were discussed at length in this Court's June 23, 2022 Opinion and are set forth as follows:

Appellant's last nine statements challenge the discretionary aspects of sentence. For ease of discussion, these nine allegations of error may be consolidated into one encompassing issue: whether this Court abused its discretion when imposing sentence.

There is no absolute right to direct appellate review of a discretionary sentencing claim. 42 Pa.C.S.A. § 9781(b); see also Commonwealth v. Greene, 702 A.2d 547, 551 (Pa. Super. 1997). Appellant must meet the following two requirements before the Superior Court will review his challenges: (1) "set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence" and (2) show there is a substantial question that the sentence imposed is not appropriate under the sentencing statute. Commonwealth v. Pennington, 751 A.2d 212, 215-16 (Pa. Super. 2000). A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the sentencing code or (2) contrary to the fundamental norms which underlie the sentencing process. Commonwealth v. Caldwell, 117 A.3d 763, 768 (Pa. Super. 2015) (quoting Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa. Super. 2011)). It is well-settled that a bare challenge that the trial court erred in imposing consecutive sentences does not raise a substantial question. Commonwealth v. Moury, 992 A.2d 162, 171-72 (Pa. Super. 2010). Only in extreme circumstances will imposition of consecutive sentences raise a substantial sentence, such as where the aggregate sentence is "unduly harsh, considering the nature of the crimes and the length of imprisonment." Id.

Ultimately, "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Antidormi, 84 A.3d 736, 760 (Pa. Super. 2014). The Appellant must show that "by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Commonwealth v. Anderson, 830 A.2d 1013, 1018 (Pa. Super. 2003) (quoting Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999). A sentence of confinement must be "consistent with the protection of the public, the gravity of the offense as it related to the impact on the life of the victim and on the community, and the rehabilitative needs of the [Appellant]." 42 Pa.C.S. § 9721(b). A sentencing court may determine an [Appellant's] potential for rehabilitation by considering his demeanor, apparent remorse, manifestation of social conscience, and cooperation with law enforcement agents. Commonwealth v. Begley, 780 A.2d 605, 644 (Pa. 2001); Commonwealth v. Constantine, 478 A.3d 39 (Pa. Super. 1984); Commonwealth v. Gallagher, 442 A.2d 820 (Pa. Super. 1982).

9

When reviewing this Court's sentencing of Appellant, the Superior Court will look at (1) the nature of circumstances of the offense and the history and characteristics of the appellant; (2) the opportunity of the sentencing court to observe the appellant including any pre-sentence investigation; (3) findings upon which the sentence was based; and (4) the guidelines promulgated by the commission. 42 Pa.C.S. § 9781(d). Additionally, at the time of sentencing, "the judge shall state on the record the reasons for the sentence imposed." Pa. R.Crim.P. 704.

Here, Appellant's claim that this Court erred in sentencing is meritless. This Court found that the facts of this case were horrific and noted that two of the witnesses, the emergency room physician (who worked with homeless and drug-addicted persons for years) and the EMT (who was a combat medic in the Middle East), adequately touched on the severity of the condition of the children when one said the neglect was one of the worst cases he had ever seen and the other mentioned he had to find an empty room so he could break down and cry. N.T. 2/7/2022, pp. 42-43. Further, this Court explained that the facts of this case were shocking and pointed out that, not only were Appellant's children significantly underweight and malnourished, but also Appellant's daughter could not walk due to the neglect, Appellant's son, who was nine years old at the time, wore a diaper that was left on so long that it could not be removed without ripping off his skin, and Appellant's other daughter with cerebral palsy required a feeding tube. Id. at p. 44. Essentially, Appellant denied his children the basic necessities that all children deserve: food, health, education, and shelter. Id. at p. 45.

Appallingly, Appellant offered nothing but meaningless excuses for his behavior. He attempted to blame his poor decisions on his children by saying things such as one wanted to remain a baby, so he let her wear diapers, or that it was convenient for L.D. to wear diapers because he had trouble making it to the bathroom, or that another was so skinny because she does not like to eat. Id. Appellant never took responsibility for the condition of his children. In fact, the thorough pre-sentence investigation report stated that "throughout the investigation, it's apparent that [Appellant] lacks empathy or remorse for the pain he inflicted on the children." Id. at p. 46. Further, the report stated:

> [Appellant] made remarks that showed his lack of insight into his children's needs. Specifically, he showed a lack of insight into [N.D.]'s cerebral palsy, stating that, because of her cerebral palsy, there's no norm for her to reach her milestones. [Appellant] indicated that S.D. likes to act like a baby. It's been documented in her medical files that she is developmentally delayed and has several mental illnesses. The doctor documented in his report his opinion that [S.D.]'s PTSD is the direct result of the abuse she suffered as the hands of her biological parents. He also indicated in his report that, based on [S.D.]'s account that she is a 'victim of torture.'

10

> Regarding [L.D.], [Appellant] advised that, instead of following the advice of medical doctors, he conducted an online search to determine whether he needed surgery.
>
> It's important to note that [Appellant] provided answers that were not truthful throughout the interview.

Id. at pp. 46-47. It is clear that Appellant has rationalized his decisions and does not believe he should be held accountable for the horrific conditions of his children.

Therefore, after taking into account the facts of the case, Appellant's background and need for rehabilitation, and the Sentencing Guidelines, this Court found the Sentencing Guidelines to be inappropriate and a sentence of total confinement was warranted. Id. at p. 48. To sentence Appellant to anything less would have depreciated the seriousness of Appellant's crimes. This Court further clarified that it "[did not] know that anyone, when drafting the guidelines, could have ever envisioned a factual scenario such as this, where children were so neglected that grown men found it difficult to maintain their composure when treating them and taking care of them....It's apparent that those children were neglected. And, quite frankly, whoever found them probably and most likely saved their lives, or could have saved their lives. That's how bad this was." Id. at pp. 48-49.

Accordingly, the reasons for sentencing were clearly outlined on the record, despite Appellant's unfounded and perplexing argument to the contrary. An aggregate sentence of nine to twenty-one years in a state correctional institution was necessary to rehabilitate Appellant and this Court did not rely on improper factors, as Appellant asserts, but rather only needed to rely on the egregious facts of the case, sentencing guidelines, and additional circumstances as noted above. Appellant's averments that this Court abused its discretion in sentencing are meritless.

Commonwealth v. Dunkowski, CP-09-CR-0000225-2020, pp. 15-16 (Bucks Cty. June 23, 2022).

Shortly thereafter, the Superior Court of Pennsylvania agreed with this Court's reasoning when it

held that:

> Immediately prior to announcing the judgment of sentence, the trial court meticulously detailed its reasoning for imposing the sentence, which included a thorough discussion of the case and elicited a complete understanding of the relevant sentencing factors as they pertained to Dunkowski. As the trial court stated in its written opinion, "after taking into account the facts of the case, [ Dunkowski's] background and need for rehabilitation, and the Sentencing Guidelines, this [c]ourt found the Sentencing Guidelines to be inappropriate and a sentence of total confinement was warranted." The court further noted that "the reasons for sentencing were clearly outlined on the record, despite [Dunkowski's] unfounded and perplexing argument to the contrary." Upon review of the record, we agree.

11

Therefore, we conclude the reasons the trial court offered for the sentence imposed were more than sufficient to conclude that the court properly considered all relevant factors in fashioning Dunkowski's sentence. Also, because the trial court had been fully informed and relied upon the presentence report, we conclude the trial court did not abuse its discretion in creating the instant sentence. Accordingly, Dunkowski's claim that the trial court failed to consider the appropriate factors in imposing the sentence lacks merit.

Commonwealth v. Dunkowski, 304 A.3d 740 (Pa. Super. 2023) (citations omitted). Therefore, it is clear that this issue has been repeatedly addressed and dismissed. Appellant's most recent allegations in the instant PCRA Petition are of no consequence. Appellant's dissatisfaction with his sentence is not a meritorious ground for relief, no matter how many times he attempts to raise the issue for review.

III. *Trial Counsel was not ineffective in his representation of Appellant during trial or on direct appeal.*

Lastly, Appellant asserts that his Trial Counsel, Brian McBeth, Esquire (hereinafter "Trial Counsel"), was ineffective for failing to: (1) "move for a dismissal of the indictment and conviction due to the judge's comments at sentencing…"; (2) interview Appellant's children; and (3) address the issues in the instant PCRA Petition on direct appeal. For the reasons discussed below, Appellant's assertions are wholly without merit.

Under the present facts, to be eligible for PCRA relief, Appellant must establish by a preponderance of the evidence that his conviction resulted from "[i]neffective assistance of counsel, which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A § 9543(a)(2)(ii).

In reviewing an ineffective assistance of counsel claim, a court presumes that counsel was effective. Commonwealth v. Fletcher, 986 A.2d 759, 772 (Pa. 2009). In order to overcome this presumption, an appellant has the burden of showing that (1) the underlying claim is of arguable

12

merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) he was prejudiced by counsel's ineffectiveness. Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987); see Commonwealth v. Walls, 993 A.2d 289, 296 (Pa. Super. 2010) (quoting Commonwealth v. Wallace, 724 A.2d 916, 921 (Pa. 1999)). Appellant must individually discuss and prove each prong of the Pierce test to be entitled to relief. Commonwealth v. Williams, 980 A.2d 510, 520 (Pa. 2009). Failing to meet any prong of the Pierce test defeats an ineffectiveness claim. Id.

Additionally, "[c]ounsel cannot be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. 2014). Moreover, counsel's representation does not lack a reasonable basis if the chosen course of strategy or tactics "had some reasonable basis designed to effectuate his client's interests. Courts should not deem counsel's strategy or tactics unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012).

A Court will not find prejudice unless a defendant proves that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Walls, 993 A.2d at 296 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)). Appellant must show that "counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Commonwealth v. Simpson, 66 A.3d 253, 277 (Pa. 2013) (quoting Harrington v. Richter, 562 U.S. 86 (2011) (citations omitted)). A claim of ineffectiveness may be denied where an Appellant's evidence fails to meet any of these prongs. Commonwealth v. Rainey, 928 A.2d 215, 224 (Pa. 2007).

13

**a. Trial Counsel was not ineffective for failing to request this Court dismiss the charges against Appellant.**

Appellant avers Trial Counsel should have moved for the dismissal of the charges at Appellant's sentencing due to this Court's comments on his *mens rea* as outlined above but fails to demonstrate his argument meets even one of the three prongs of the test outlined in <u>Pierce</u>. First, Appellant's claim has no merit. While this Court thoroughly discussed this issue when analyzing Appellant's sufficiency of the evidence claim, the gist of the matter is that Appellant is taking this Court's comments out of context to construe them as something they are not. Second, as there was no merit to the argument that the charges should be dismissed based on this Court's remarks at sentencing, Appellant cannot show that Trial Counsel was unreasonable for failing to raise the issue. Third, Appellant does not even attempt to explain how Trial Counsel's failure to raise a meritless argument at trial prejudiced Appellant. Therefore, it is clear that Appellant's claim is illogical, undeveloped, and wholly without merit.

**b. Trial Counsel was not ineffective for failing to present two of Appellant's children as witnesses at trial.**

Next, Appellant argues that Trial Counsel was ineffective for failing to interview and present two of his children who were not victims in the instant matter as witnesses in his case. Again, Appellant's claim fails to meet any prong of the <u>Pierce</u> test and is entirely meritless.

Initially, this Court notes that Appellant entirely fails to develop this claim. Undeveloped claims are deemed waived and unreviewable on appeal. <u>See</u> <u>Commonwealth v. Jackson</u>, 431 A.2d 944, 945 n. 1 (Pa. 1981) (where ineffectiveness claim was listed in statement of questions, but not addressed in argument section of brief, claim was waived; waiver is warranted because "Appellant has failed to guide this Court as to the facts or applicable law"). <u>See also</u> <u>Commonwealth v. Marrero</u>, 748 A.2d 202, 204-05 (Pa. 2000) (Nigro, J., Concurring) (same); <u>Commonwealth v.</u>

14

Williams, 732 A.2d 1167, 1175 (Pa. 1999) (recognizing "unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal"); Commonwealth v. LaCava, 666 A.2d 221, 229 n. 9 (Pa. 1995) (claim mentioned in statement of questions in direct capital appeal, but not mentioned again or developed in argument section of brief is waived); Commonwealth v. Ragan, 645 A.2d 811, 828 (Pa. 1994) (boilerplate allegation provides no basis for relief). Therefore, this Court believes Appellant's claim is waived.

However, while this Court believes the argument is waived, it will nevertheless address and dismiss the claim on the merits. Essentially, Appellant believes that Trial Counsel's failure to call his two minor children, who were not included as victims in the instant matter, as witnesses in Appellant's defense resulted in ineffective representation. This Court does not agree.

Appellant attached two unsigned, unverified "emails" to his Amended PCRA Petition that are purportedly authored by his two (then minor) children, J.D. and M.D.. In sum, the letters state that Appellant was merely trying to do his best amid serious financial troubles and that they feel the sentence imposed by this Court is too severe. In his Amended PCRA Petition, Appellant argues that these letters prove Trial Counsel should have called J.D. and M.D. as witnesses. However, Appellant does address the fact that neither J.D. nor M.D. were in the vehicle when the Victims were found and Appellant was arrested. He does not address the fact that they have no first-hand knowledge of the situation as they were both staying with friends at the time (as they explain in their letters). In fact, Appellant even states that Trial Counsel decided not to call them as witnesses as they "would be a liability, and the D.A. would take them apart." Ironically, Appellant does not even realize that his own argument undermines his claim. It is clear that even if Appellant's claim had merit (which this Court believes it does not), Trial Counsel had a reasonable basis to decline to present J.D. and M.D. as witnesses. Even if they were presented, the Commonwealth could have

15

easily challenged and discredited their testimony with the plethora of photographs and statements from individuals who had firsthand knowledge of the incident as they were actually present at the scene of the crime.

Lastly, Appellant is unable to demonstrate that he was prejudiced by Trial Counsel's conduct. When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the Strickland test by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). To demonstrate Strickland prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Commonwealth v. Gibson, 951 A.2d 1110, 1134 (Pa. 2008); see also Commonwealth v. Chmiel, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense."). Here, it is obvious that, not only would J.D. and M.D.'s testimony have not helped Appellant, it would have most likely actually *hurt* his defense. Therefore, this claim does not afford Appellant any relief.

### c. Trial Counsel was not ineffective on direct appeal.

Lastly, Appellant attempts to raise what he calls a "layered ineffectiveness issue," but what is actually just Appellant feeling upset that the Superior Court of Pennsylvania dismissed his direct appeal. Essentially, because the claims Trial Counsel raised on direct appeal were not found to be meritorious, Appellant believes that had Trial Counsel raised any of the additional claims raised in the instant matter, he would have been successful. He provides no further insight or analysis as

16

to how he came to such a conclusion and this Court cannot fathom the same. "It is well-settled that counsel may not be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Hubbard, 372 A.2d 687 (Pa. 1977). Put simply, it appears that Appellant is merely unhappy with his sentence and is attempting to conjure up ineffective assistance of counsel claims in hopes that either this Court or the Superior Court will side with him and overturn his conviction. However, this Court is not fooled. Appellant was convicted of Endangering the Welfare of Children after a fair trial with competent Trial Counsel. Any argument to the contrary is belied by the record and is meritless.

## CONCLUSION

For the foregoing reasons, this Court respectfully requests the Superior Court affirm this Court's February 7, 2022 Judgment of Sentence

June 20, 2025
Date

_____
WALLACE H. BATEMAN, JR., J.

CLERK OF COURTS
BUCKS COUNTY

2025 JUN 20 P 2: 55

RECEIVED

17